Argued and submitted March 25, 2009; reversed and remanded (1) for recalculation of husband's child support obligation, taking into consideration husband's military allowances for housing and food, (2) for recalculation of wife's share of husband's military pension, (3) for recalculation of husband's arrearage in temporary child and spousal support, and (4) to require the election of a survivor annuity for wife; otherwise affirmed March 31, 2010

## In the Matter of the Marriage of

### Jennifer Jo STOKES,
*Petitioner-Appellant,*

*and*

### Christopher Joseph STOKES,
*Respondent-Respondent.*

### Lincoln County Circuit Court
050665; A136795

228 P3d 701

George W. Kelly argued the cause and filed the brief for appellant.

Scott J. Schaub argued the cause for respondent. With him on the brief was Kulla, Ronnau, Schaub & Chambers, P.C.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Wife appeals a judgment dissolving the parties' marriage. She assigns error to the trial court's calculation of child support, to the calculation of her share of husband's military pension, to the trial court's failure to require husband to elect a survivor's annuity, and to the trial court's allowance of an offset of temporary spousal and child support arrearages. Because we agree with wife that the trial court erred in each respect, on *de novo* review, ORS 19.415 (2007),[1] we remand the judgment for entry of a modified judgment.

The facts are largely undisputed. Husband and wife were married in January 1993 and have one child, a son, born in 1997. At the time of trial in August 2006, wife was 34 years old and husband was 36. Husband has been in the Air Force since 1991. He was stationed overseas from August 2003 to August 2004, and when he returned, the parties separated. We will describe other facts later on as they pertain to the issues discussed.

The first issue on appeal concerns the calculation of child support—specifically, whether husband's military allowances for housing and food are included in his "gross income" for the purpose of calculating his child support obligation. The "basic allowance for housing" (BAH) is a monthly sum paid to active duty members of the military who do not reside in government-supplied housing and is intended to offset the cost of civilian housing. 37 USC § 403(a)(1). The amount varies according to the member's pay grade, geographic location, and dependency status. *Id.* The "basic allowance for sustenance" (BAS) is an additional monthly sum paid to active duty members to subsidize the cost of meals purchased for the benefit of the individual member on or off base. 37 USC § 402(a)(1). Both allowances are excluded from gross income for federal income tax purposes. 26 USC § 134(a) ("Gross income shall not include any qualified military benefit."). Together, husband's BAH and BAS come to about $1,275 per month, and that amount is included in his semi-monthly paychecks.

---

[1] The notice of appeal in this case was filed before the effective date (June 4, 2009) of the 2009 amendments to ORS 19.415. Accordingly, the provisions of ORS 19.415(3)(b) do not apply.

The trial court ruled that, because husband's BAH and BAS are excluded from income for federal income tax purposes, they do not constitute income for purposes of calculating child support. On appeal, wife contends that, although the BAH and BAS are not subject to federal income taxation, they are nonetheless part of husband's "gross income," as that term is defined in the Child Support Guidelines, OAR 137-050-0340. Husband contends that the guidelines unambiguously exclude those allowances from gross income.

ORS 107.105(1)(c) is the source of the trial court's authority to make provision in the dissolution judgment "for the support of the children of the marriage by the parties." The trial court is required to calculate the amount of support by using the formula established pursuant to ORS 25.275. ORS 107.105(1)(c).

ORS 25.275 provides, in part:

"(1) The Division of Child Support of the Department of Justice shall establish by rule a formula for determining child support awards in any judicial or administrative proceeding. In establishing the formula, the division shall take into consideration the following criteria:

"(a) All earnings, income and resources of each parent, including real and personal property;

"* * * * *

"(2) The formula described in subsection (1) of this section must also comply with the following standards:

"(a) The child is entitled to benefit from the income of both parents to the same extent that the child would have benefited had the family unit remained intact or if there had been an intact family unit consisting of both parents and the child.

"(b) Both parents should share in the costs of supporting the child in the same proportion as each parent's income bears to the combined income of both parents."

The Oregon Department of Justice has, in turn, developed a formula for the calculation of child support, and that formula is set forth in the Oregon Child Support

Guidelines, OAR 137-050-0320 to 137-050-0490. OAR 137-050-0320(5) provides that a parent's "basic child support obligation" is determined by "applying the parent's adjusted gross income * * * to the scale in the manner set out in OAR 137-050-0490." Under OAR 137-050-0320(8), "gross income" means "the income of the parent calculated pursuant to OAR 137-050-0340, 137-050-0350 [relating to self-employment,] and 137-050-0360 [income presumptions in special circumstances]." OAR 137-050-0340(1) states that "gross income" includes

> "income from any source including, but not limited to, salaries, wages, commissions, advances, bonuses, dividends, severance pay, pensions, interest, honoraria, trust income, annuities, return on capital, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, including lottery winnings, and alimony or separate maintenance received."[2]

Gross income also includes "[e]xpense reimbursements or in kind payments received by a parent in the course of employment, self employment, or operation of a business * * * if they are significant and reduce personal living expenses." OAR 137-050-0340(2). The question on appeal is whether father's BAH and BAS are part of his "gross income" for purposes of child support.

■        In construing the child support guidelines, our role is to determine the intent of the enacting body by looking first to the text and context of the rule. *Perlenfein and Perlenfein*, 316 Or 16, 20, 848 P2d 604 (1993). We note, initially, that the texts of OAR 137-050-0320(8) and OAR 137-050-0340(1) do not define "gross income" in terms of taxable income. Nor do they cross-reference the Internal Revenue Code's definitions of "gross income" or "adjusted gross income."[3] Rather, OAR

---

[2] "Modified gross income" means gross income reduced by any mandatory payments to a labor organization, court-ordered spousal support, and ordered health care coverage costs. OAR 137-050-0320(13). "Adjusted gross income" is "modified gross income minus deductions for the nonjoint child(ren) as allowed by OAR 137-050-0400 and plus Social Security or Veterans' benefits as allowed by 137-050-0405." OAR 137-050-0320(2).

[3] The Internal Revenue Code provides that "gross income includes all income from whatever source derived," 26 USC § 61(a). The code further defines both "gross income" and "adjusted gross income," 26 USC § 62, in ways that are very

137-050-0340(1) sets forth a nonexclusive list of sources that make up "income from any source." We note, further, that some of the listed sources, such as Social Security and disability benefits, are potentially not taxable. *See* 26 USC § 86; 26 USC § 105. In at least one case, we have held that earned income that is not subject to federal income tax should nonetheless be treated as part of "gross income" in the child support calculation. *See Halpert and Leonard,* 157 Or App 276, 970 P2d 253 (1998) (husband's nontaxable voluntary contributions to a 401(k) retirement account are part of his gross income under OAR 137-050-0340(1)). Contrary to the trial court's reasoning, we conclude that "gross income" as defined in OAR 137-050-0340 is not limited to taxable income; rather, as the rule explicitly provides, it includes "income from any source," if it is available for support of the child.

---

different from how the terms are defined in OAR 137-050-0340 and OAR 137-050-0320. For example, 26 USC § 61(a) provides:

"General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

"(1)   Compensation for services, including fees, commissions, fringe benefits, and similar items;

"(2)   Gross income derived from business;

"(3)   Gains derived from dealings in property;

"(4)   Interest;

"(5)   Rents;

"(6)   Royalties;

"(7)   Dividends;

"(8)   Alimony and separate maintenance payments;

"(9)   Annuities;

"(10)  Income from life insurance and endowment contracts;

"(11)  Pensions;

"(12)  Income from discharge of indebtedness;

"(13)  Distributive share of partnership gross income;

"(14)  Income in respect of a decedent; and

"(15)  Income from an interest in an estate or trust."

The Internal Revenue Code definition of "adjusted gross income" provides:

"(a)   General rule.—For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions[.]"

26 USC § 62. The section then includes a long list of deductions, including deductions for business expenses, losses from the sale or exchange of property, deductions attributable to rents and royalties, etc.

■ Our conclusion is consistent with the policies underlying the child support guidelines. ORS 25.275(1)(a) provides that the formula for calculating child support awards "shall take into consideration * * * [a]ll earnings, income and resources of each parent[.]" ORS 25.275(2)(a) provides that the formula must ensure that the child benefits from the income "of both parents to the same extent that the child would have benefited had the family unit remained intact." *See Nieth and Nieth*, 199 Or App 330, 338, 111 P3d 746, *adh'd to as clarified on recons*, 200 Or App 582, 116 P3d 234 (2005) (a child support award is "an attempt to simulate the economic benefits that the child would enjoy had the family remained intact"); *Peterson and Peterson*, 132 Or App 190, 201, 888 P2d 23 (1994) ("ORS 25.270(4) expresses a policy that child support awards be based on economic factors that address the needs of the dependent children."). In furtherance of those policies, we conclude that sources of income that are available to the parents—whether or not they are taxable—should be considered in determining the parent's child support obligation.

■ We further conclude that husband's BAH and BAS fall within the broad category of "income from any source." Those allowances are paid to husband in his semi-monthly paychecks and are available to him to spend as he desires. There is no reason why they should not be considered income for purposes of calculating husband's support obligation. We conclude, therefore, that the trial court erred in excluding husband's BAH and BAS from his gross income.

We next address wife's contention that the trial court erred in its calculation of her share of husband's military pension. As a member of the military, husband will be entitled to a military pension after 20 years of service. At the time of trial, husband had served 15 years and two months. He testified that he had recently reenlisted and that his reenlistment was scheduled to take him past 20 years of service. After 20 years of service, husband's pension amount will be determined by a formula that uses husband's three highest years of pay.

■■ The Uniformed Services Former Spouses' Protection Act (FSPA), 10 USC § 1408, authorizes state courts to treat

"disposable retired pay" as divisible property for purposes of state dissolution laws. State law applies in determining the treatment of a military pension.[4] In Oregon, pensions, including military pensions, are personal property and, pursuant to ORS 107.105,[5] the "marital asset" portion of a pension (that is, the portion that accumulated during the marriage) is subject to division when a marriage is dissolved. *Campbell and Campbell*, 151 Or App 334, 337-38, 948 P2d 765 (1997); *Manners and Manners*, 68 Or App 896, 899, 683 P2d 134 (1984). Generally, a spouse is entitled to one-half of that portion of a pension that was accumulated during the marriage. *See Valley and Valley*, 97 Or App 95, 98, 775 P2d 332, *adh'd to on recons*, 99 Or App 252, 781 P2d 1219 (1989), *rev den*, 309 Or App 522, *cert den*, 498 US 920 (1990); *Manners*, 68 Or App at 899.

In this case, at the time of dissolution in August 2006, husband had served 15 years and two months, two years of which had occurred before the marriage, and he had not yet retired. Including the year that husband was overseas, the parties lived separately for the last three years of the marriage. In determining the "marital asset" portion of the pension, the trial court included the period between the date that the parties married—January 1993—and September 1, 2003, the date that the trial court concluded the parties had separated. The court explained in its oral ruling

---

[4] FSPA, 10 USC section 1408(c), provides, in part:

"(1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction of such court.*"

(Emphasis added.)

[5] ORS 107.105(1) provides, in part:

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

that it did not think that wife should share in the portion of husband's pension that had accrued during the years when the two were not living together but before they were divorced.

Because husband has not yet retired, the court chose a "hypothetical" retirement date (September 1, 2003) for purposes of determining the size of the entire pension. The court explained:

> "Husband makes a strong argument that Wife should not share in post-separation promotions, cost-of-living, and pay increases when it comes to determining what percentage she should receive once Husband retires. The parties are still young and retirement is a long way off for both of them."

The judgment then awarded wife 20 percent "of the disposable retired pay [that husband] would have received had he retired on September 1, 2003, with 12 years of creditable service."

On appeal, wife asserts that the trial court's division of the pension was incorrect in several respects: (1) in determining the "marital asset" portion of the pension, the court should have used the date of dissolution rather than the date of separation; (2) in determining the total pension, the court should have used husband's actual years of service, to be determined at the time of his actual retirement, rather than a "hypothetical" retirement date of September 1, 2003; and (3) the court should have awarded wife 50 percent of the marital asset portion of the pension. Additionally, wife contends that the court should have required husband to purchase a survivor annuity so that, in the event that husband predeceases her, she will continue to receive the equivalent of her share of husband's pension.

■ We first address the second of wife's arguments—that, in determining the total pension to be divided, the trial court erred in using a "hypothetical" retirement date of September 1, 2003, which the court deemed to be the date of separation. Husband's pension is in the nature of a defined benefit plan, and it has not yet matured, because husband will not be entitled to retirement benefits until he has accumulated 20 years of creditable military service. We agree

with wife that, under Oregon law, the marital portion of husband's pension must be calculated as a fraction *of the entire actual pension*, rather than as a fraction of a hypothetical pension amount.

■      The "time" rule is typically used to calculate the marital portion of benefits under a defined benefit retirement plan. *Kiser and Kiser*, 176 Or App 627, 632 n 1, 32 P3d 244 (2001). Under that rule, the marital portion is determined by multiplying the total actual pension benefit by a fraction, the numerator of which is the number of years (or months) of service during the marriage and the denominator of which is the total years (or months) of employment. *Id.*

In *Kiser*, the husband was a federal civil service employee who had not yet retired, and he sought to base the wife's share of his pension on the monthly payout that he would have received had he retired on the date of dissolution. We rejected that approach, explaining:

"We have repeatedly emphasized that, when retirement benefits have not matured and are thus not presently liquid, it is equitable to look to the value of the benefit at retirement, because 'it is not proper to assume, for purposes of computing the value of these rights, that husband would immediately leave public service and * * * ignore the vested pension benefits.' "

176 Or App at 631 (quoting *Minnis and Minnis*, 54 Or App 70, 75, 634 P2d 259 (1981)). Thus, we held, the wife's interest in the pension was to be based on the total pension benefit as of the date of retirement, determined either by way of an actuarial present value or through a division of benefits as they are distributed. 176 Or App at 632.

■      The same rationale applies here. Although husband's pension is not yet vested, he testified that he plans to stay in the military long enough to qualify for a pension. Because a preponderance of the evidence demonstrates that husband plans to retire after 20 years of service in the Air Force, it is not proper to assume that husband will retire as of the date the parties separated or divorced. Rather, the appropriate measure of the total pension benefit is the value of husband's pension as of the date of his actual retirement, determined either by way of the actuarial present value or as

the benefits are distributed at the time of retirement. The trial court erred in using a hypothetical retirement date based on the date of separation in determining the total value of the pension.

We next address wife's contention that the court should have used the date of dissolution, rather than the date of separation, in determining the marital asset portion of the pension. Under Oregon law, property acquired during the marriage is a marital asset to which a rebuttable presumption of equal contribution applies. *Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004). Even property acquired after separation but before dissolution is considered to be a marital asset to which the presumption applies. *Follansbee and Ackerman*, 115 Or App 39, 44, 836 P2d 763 (1992). Thus, wife is correct that the marital asset portion of the pension is that portion that accrued from the date of the marriage to the date of dissolution.

The next question, then, is whether husband has rebutted the presumption of equal contribution with respect to any of that time. *Id.* at 134. The trial court determined, essentially, that wife did not make any contribution to accumulation of the pension after husband went overseas. The relevant testimony is as follows. Wife testified that the parties had not been getting along and that she viewed husband's time overseas as a trial separation. Husband did not dispute that the marriage was troubled, but he did not consider the time overseas to be a trial separation; he hoped that the parties would work out their difficulties and stay together. Wife testified that she realized during the time that husband was gone that she did not miss him. She testified that she made her decision then to seek a divorce when he returned. The day that husband returned from overseas, wife told him of her intention to file for divorce.

The trial court determined, essentially, that wife made no contribution to the pension while the parties were living apart. On *de novo* review, we agree that husband has rebutted the presumption of equal contribution with respect to that portion of the pension attributable to the two-year period of separation after husband returned from overseas. It was at that time that the parties formally separated.

■   However, we disagree with the trial court's conclusion with respect to the year that husband was overseas. Although the parties were not living together during that time, they were still functioning as a marital unit. *Compare Richardson and Richardson*, 307 Or 370, 377, 769 P2d 179 (1989) (that portion of the present value of a pension that is attributable to the husband's post-separation employment, during which time the parties were no longer living as a marital unit, is an individually acquired asset with respect to which the statutory presumption of equal contribution is rebutted). While husband was overseas, wife worked full-time and contributed her income to the household expenses. She remained in and maintained the family home and cared for the parties' then-five-year-old son.

■   The trial court found that wife spent too much money while husband was gone—and, indeed, wife incurred a significant debt during that period of time. Nonetheless, we conclude that, during that year, the marital unit was intact and that husband has failed to rebut the presumption that wife contributed equally to the acquisition of the pension, by maintaining the household, working full-time, and caring for the parties' child. Accordingly, we conclude that the trial court erred in using August 2003 as the ending date for the acquisition of the marital portion of the pension. The marital portion of the pension is that portion attributable to the years between the date the parties married and the parties' separation in August 2004, when husband returned from overseas. On remand, the trial court should determine the marital portion of the total pension benefit by multiplying the pension value as of the date of retirement by a fraction, the numerator of which is the total months of service from the date of marriage until the parties separated in August 2004, and the denominator of which is the total months of employment.

■   We also conclude that the trial court erred in awarding wife only 20 percent of the marital portion of the pension instead of 50 percent, which would reflect her equal contribution. Husband presented no evidence that wife is not entitled to an equal share of that portion of the pension that accrued during the time when the parties were functioning as

a marital unit. *See Kunze*, 337 Or at 134 ("When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the 'just and proper' division of the marital assets is an equal division between the parties.").

In her final argument with respect to the property division, wife contends that the trial court erred in failing to require husband to purchase an annuity under the military Survivor Benefit Plan, 10 USC §§ 1447-1455, and to designate her as an irrevocable beneficiary. Military retirees may participate in the Survivor Benefit Plan, through which an annuity may be purchased to award to a surviving spouse, former spouse, or child up to 55 percent of the retiree's retirement benefit. The cost of participation is withheld from the member's monthly retirement pay. 10 USC § 1452. An eligible participant may elect to name a former spouse as the beneficiary. 10 USC § 1448(b)(2), (3). Federal law also allows state courts to order military service members to participate in the Survivor Benefit Plan when they retire and to designate a former spouse as beneficiary. 10 USC § 1450(f)(3)(B)(ii) (a military spouse is required to make an election to provide an annuity to a former spouse if required by court order); 10 USC § 1450(f)(4).

The trial court declined to require husband to purchase an annuity for wife under the Survivor Benefit Plan.[6] Wife contends that her interest in husband's retirement plan, which would terminate with his death, should be protected in the event that he predeceases her. Wife is correct that we have previously identified that rationale as the basis for

---

[6] The trial court may have incorrectly believed that it could not award such benefits to wife in light of the fact that husband had not yet retired. The general judgment provides:

"Respondent has not retired at the time this judgment is entered of record herein. Petitioner is not entitled to and is not awarded Military Survivor Benefits."

In fact, the trial court was authorized to require husband to elect to provide an annuity at the time he becomes eligible for retirement benefits. 10 USC section 1448(b) provides, in part:

"(2) Former spouse coverage upon becoming a participant in the Plan.—

"(A) General rule.—A person who has a former spouse upon becoming eligible to participate in the Plan may elect to provide an annuity to that former spouse."

requiring a retired spouse to designate the other spouse as a beneficiary of a survivor annuity. In concluding in *Kiser* that the wife was entitled to the survivor benefit on the husband's federal pension plan, we reasoned:

> "Husband * * * receiv[ed] the benefit of wife's contribution as a wife, mother, and homemaker for 30 years of the marriage, during which time the benefits that would be subject to the survivor annuity accrued. Wife is therefore entitled to not only the income provided by those retirement benefits but also the security of access to that income throughout her retirement. Husband is assured that security by virtue of his participation in the plan, and, were the parties to remain married, wife would be entitled to survivor benefits automatically. Wife is therefore entitled to the maximum former spouse survivor benefit under husband's [retirement] plan, and the cost of that annuity is to be split equally between the parties."

*Kiser*, 176 Or App at 633. Wife contends that, similarly here, because she is entitled to an equal share of the marital portion of husband's military pension, it is just and proper that husband be required to designate her as the beneficiary of the Survivor Benefit Plan so that, in the event that husband predeceases her, she will continue to receive the equivalent of her share of the marital portion of the pension. Husband contends that this case is distinguishable from *Kiser*, because the parties in *Kiser* had been married for 30 years, during the entire period of the husband's employment. Here, in contrast, the parties were married only 13 years.

That factual distinction notwithstanding, we agree with wife that, in view of the fact that wife is entitled to a share of the marital portion of husband's retirement benefits, and because those benefits would terminate if husband were to predecease her, it is appropriate that wife's interest be protected by the provision of survivor benefits in an amount sufficient to cover wife's share of the marital portion of the pension, with the parties to share equally in the cost of the annuity.

Finally, wife contends that the trial court erred in determining that husband satisfied any pretrial child and spousal support arrearages by paying down the parties' credit card debt. It is not disputed that, in September 2005,

the trial court entered a limited judgment requiring husband to pay temporary child and spousal support retroactive to May 1, 2005, and that, at the time of trial, husband had accrued arrearages in temporary support of approximately $9,000, an amount approximately equal to the parties' credit card debt. During that same time, husband also had made overpayments in interim support, which the trial court awarded to him by way of a supplemental judgment. In determining that husband did not have to pay the support arrearage, the trial court explained, "There is no interim spousal support arrearage or interest owing on those sums, due to [husband's] payments on credit card debts."

■■■ Wife contends that the trial court lacked authority to "forgive" husband his past-due support obligation. *See Warren and Warren*, 31 Or App 213, 218, 570 P2d 104 (1977) (under *former* ORS 107.095(2), each payment under a temporary support order that was not paid by its due date became a judgment and could not be cancelled); *see also Alls and Alls*, 137 Or App 32, 34, 902 P2d 1204 (1995) (the trial court lacks authority to "forgive" an unpaid accrued support obligation); *accord Goertel and Goertel*, 209 Or App 585, 588, 149 P3d 247 (2006); *Binnell and Binnell*, 153 Or App 204, 208, 956 P2d 1003 (1998). Husband contends that the trial court's ruling did not, in effect, forgive his past due obligation, but rather treated the delinquency as having been satisfied by his payment of the parties' credit card bills. We agree with husband that that appears to have been the trial court's rationale, but reject the conclusion that husband's payment of the parties' joint debt could be credited against his temporary support obligation as set forth in the limited judgment. The temporary support in this case was awarded to provide wife with assistance in meeting her monthly expenses during the pendency of the dissolution proceeding. Husband's arrearage cannot be adjusted for his payment of the parties' joint debt. *Crump and Crump*, 138 Or App 362, 370, 908 P2d 839 (1995) (arrearage award for unpaid temporary spousal support could not be reduced to reflect husband's voluntary payment of wife's share of house payments); *see Alls*, 137 Or App at 34 ("The *pendente lite* [temporary support] order was not a division of property. It was to provide assistance to wife and the parties' child while the dissolution

was proceeding."). We therefore conclude that the trial court erred in crediting husband's delinquent temporary support obligation by the amounts paid toward the parties' debt.

Reversed and remanded (1) for recalculation of husband's child support obligation, taking into consideration husband's military allowances for housing and food; (2) for recalculation of wife's share of husband's military pension; (3) for recalculation of husband's arrearage in temporary child and spousal support; and (4) to require the election of a survivor annuity for wife; otherwise affirmed.