Argued and submitted March 17, reversed and remanded with instructions
to enter judgment consistent with this opinion; otherwise affirmed
December 15, 2010

In the Matter of the Marriage of

Steven S. FORNEY,
*Petitioner-Appellant,*

*and*

Mary L. FORNEY,
*Respondent-Respondent.*

Lincoln County Circuit Court
061001; A139798

244 P3d 849

Jeffrey C. Hollen argued the cause for appellant. With him on the briefs was Ouderkirk & Hollen.

George Kelly argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Husband appeals a judgment dissolving the parties' 20-year marriage, contending that the trial court erred in awarding spousal support and in its division of the marital property, specifically in its treatment of husband's remainder interest in a small farm and husband's military and Public Employees Retirement System (PERS) pensions. On *de novo* review, ORS 19.415(3) (2007),[1] we agree with husband that the trial court erred in its division of the marital property and modify the judgment accordingly.

The parties were married in 1986. At the time of the marriage, husband was 45 years old, and wife was 27. Both had prior marriages, and husband had significant employment experience before their marriage.

Husband graduated from high school and enlisted in the United States Navy in 1959. He served until 1981, a total of 23 years and six months. He retired in 1981 and began immediately to draw retirement payments from his military retirement plan, which was fully vested and in payout status. Following his retirement from the Navy, husband moved to Oregon with his four children from his first marriage and lived with his aunt in her house on her 29-acre farm in Waldport. He later moved into an apartment and started work as a Lincoln County deputy sheriff. A little over five years later, he and wife were married.

Wife graduated from high school and began work as a retail clerk or counter person. She had one child from her previous marriage, whom husband adopted following the parties' 1986 marriage.

Beginning in September 1990, the parties obtained permission from the county to place a mobile home on husband's aunt's 29-acre farm in Waldport. The parties wished to be in a position to assist the aunt. Husband was primarily responsible for his aunt's care, but both husband and wife

---

[1] This case was filed before the effective date of the 2009 amendments to ORS 19.415(3)(b) that made *de novo* review discretionary with the Court of Appeals. Or Laws 2009, ch 231, § 2.

assisted her and helped with the farm chores. In 1991, husband's aunt deeded him the farm in Waldport, reserving for herself a life estate.

In 1992, husband purchased a survivor annuity on his military pension for wife. The cost of the survivor annuity is approximately $150 per month. He also purchased, with allotments from his military pension, three life insurance policies and established a Navy Federal Credit Union account.

Wife, meanwhile, attended community college and, by 1995, attained both an associate of science and an associate of arts degree from Portland Community College. Husband continued working as a deputy sheriff until 1998, when he retired. At that point, he began drawing on his pension from the Oregon Public Employee Retirement System (PERS). He also elected a survivor annuity for wife. At the time, the cost of the annuity was $238 per month, but the amount has increased over time.

In November 2000, wife began working for Fred Meyer, where she continued to work through the time of the dissolution as a manager of a Starbuck's coffee shop. Through her employment, wife has health insurance benefits and a small pension. During the marriage, wife put much of her income into savings, which the parties intended to use to build a new house on the property.

The parties separated in 2005, and wife moved out of the mobile home on the Waldport farm. Husband continues to live in the mobile home and to take care of his aunt and the farm. He described the property as a small hobby farm and testified that he currently has one horse, one cow with a newborn calf "along the side," two bulls and a heifer, four dogs, and six cats.

At the time of the dissolution trial in 2006, husband was 65 years of age, and wife was 47. Husband takes medications for his heart and to manage his blood pressure, cholesterol, and depression. He has arthritis in one of his feet that at times limits his physical activities, but he is otherwise in good health. Wife is in good health. There are no minor children.

Husband's income at the time of trial consisted of a combination of retirement benefits. His monthly military pension benefit after payment of the survivor annuity is $1,502. The present value of the military pension as of March 1, 2007, is $243,313. The present value of wife's survivor annuity is $84,855. Husband's monthly PERS benefit, less payment of the survivor annuity, is $1,900. The present value of husband's PERS pension, less the cost of the survivor annuity, is $310,313; without the survivor annuity, the present value is $358,003. Under a "blend rule" formula (also referred to as the "formula plus annuity" method) used by the parties' expert, the marital share of the PERS pension is 77.4 percent, or $240,182 with the annuity, and $277,094 without the annuity. The present value of the marital portion of the PERS survivor annuity, net of the cost of the annuity, is $177,166.

Husband also collects Social Security of approximately $1,292 per month. His gross monthly income from all sources in 2006 was approximately $4,583. From that amount, husband pays for dental insurance, wife's survivor annuities, and several life insurance policies, and he sets aside an amount each month in a credit union savings account. Husband owns an additional life insurance policy that is self-funded.

Husband also owns the farm in Waldport. The value of the farm was disputed at trial. Husband's expert witness valued the property at between $154,000 to $172,000. Wife's expert opined that the property could sell for between $199,000 to $219,000. She testified that she did not separately consider the cost of removing the structures, but that some of her comparable properties had similar structures. Both witnesses recognized the difficulty of valuing a property subject to a life estate, but wife's expert testified that, in light of the aunt's advanced age, the property could be valued at "pretty much full value."

Wife earns approximately $2,000 per month at the Fred Meyer Starbucks. She also has accumulated a savings account of $17,000 from her earnings.

The trial court largely adopted wife's proposed property division. The court did not place a value on the Waldport

farm, but awarded it to both parties as tenants in common, subject to the aunt's life estate. Husband is permitted to reside on the property rent-free until the termination of the life estate, after which time the property is to be sold and the proceeds divided equally. The trial court ordered that husband pay all expenses associated with the property while he lives there, including taxes and insurance, and also ordered that husband reimburse wife for any taxes that she incurs as the result of an eventual sale.

As for the pensions, the trial court did not address the value of either one. Nor did it place a value on wife's annuities. The military pension the court awarded to husband outright, free of any interest by wife. As for the PERS pension, the court awarded wife half of the monthly payments, as opposed to half of its actuarial value. The court divided approximately equally the cash value of the three life insurance policies and the Navy Federal Credit Union account. Finally, the court awarded wife $500 per month indefinite spousal support, in recognition of the duration of the parties' marriage. The trial court also specifically ordered that husband pay the spousal support out of his military pension benefits.

On appeal, husband takes issue with essentially every aspect of the trial court's award, *viz.*, the disposition of the pensions, the treatment of the Waldport farm, the division of the life insurance policies and credit union account, and the spousal support award.

We begin with the disposition of the pensions. According to husband, the trial court erred (1) in treating the PERS account as an income stream rather than as a marital asset; (2) in failing to consider the value of wife's survivor annuities; and (3) in effectively awarding a portion of the military pension by ordering that spousal support be paid with military pension benefits. Wife contends that, taken as a whole, the trial court's disposition was a reasonable attempt to achieve a just and proper distribution of assets.

In determining a "just and proper" division of marital property pursuant to ORS 107.105(1)(f), the first step is to determine which assets are "marital assets" because they were acquired during the marriage. *Kunze and Kunze*, 337

Or 122, 134, 92 P3d 100 (2004). If an asset is a marital asset, then it is subject to a rebuttable presumption of equal contribution; unless the presumption of equal contribution is rebutted, an equal division of the asset is appropriate. *Id.* at 135.

■ We begin with the military pension. It is clearly not a marital asset, because it was acquired by husband before the marriage. About that much, there appears to be no dispute. In addition to the military pension itself, however, there is also wife's survivor annuity on that pension. That annuity, acquired by the parties during the marriage, is a marital asset. As we held in *Miller and Garren*, 208 Or App 619, 623, 145 P3d 285 (2006), a survivor's annuity is analogous to an unvested pension and is subject to valuation and the court's disposition on dissolution. Although it is possible that wife could die before husband and never see the benefits from the annuity, in light of the 18-year disparity in their ages, it is likely that wife will survive husband. As in *Miller*, the parties' expert in this case took into account the contingency of wife's survival when valuing annuity. Wife is the only beneficiary of the survivor annuity, and it will provide her with income for many years. We conclude that it is appropriate to take wife's survivor annuity into account in the property distribution and that the trial court erred in failing to do so. As we have noted, the present value of wife's survivor annuity is $84,855. That value should be assigned to wife in the property division.

■■ As for the trial court's order that spousal support be paid from the military pension benefits, we agree with husband that there appears to be no authority for such an order. Wife suggests that the court's order may be construed simply to treat the military pension as security for the continued payment of spousal support. The judgment does not say that, however. Moreover, while it may be appropriate in some circumstances to require an obligor to secure an obligation to pay support, *see, e.g., Maginnis and Maginnis*, 95 Or App 411, 413, 769 P2d 780, *rev den*, 308 Or 142 (1989) (spousal support secured by proceeds from a promissory note), there is no evidence that such security is necessary, nor is there any basis for requiring that property that is not a marital asset be the source of that security. We conclude that the trial court

erred in requiring that spousal support be paid out of the military pension benefits.

We turn to the PERS account. The parties agree that 77.4 percent of that pension, or $240,182, is a marital asset. We agree with husband that the trial court's splitting the asset through a division of the monthly income stream does not reflect a correct division of the marital portion of that asset. The pension is property, not merely an income stream. ORS 107.105(1)(f) ("[A] retirement plan or pension or an interest therein shall be considered as property[.]"); *Richardson and Richardson*, 307 Or 370, 376, 769 P2d 179 (1989). We therefore conclude that the marital portion of the PERS pension should be divided equally between the parties pursuant to a qualified domestic relations order (QDRO). Thus, wife's share of the marital asset portion of the pension, or approximately $120,091, must be attributed to wife in the property division.

As we have noted, husband also purchased for wife's benefit a survivor annuity on the PERS pension. It is undisputed that the present value of that annuity is $177,166. As with the annuity on the military pension, this annuity also, under *Miller*, 208 Or App at 623, should be treated as a marital asset. In light of our conclusion that the marital portion of the PERS pension should be divided by way of a QDRO rather than as an income stream, we agree with husband that it is appropriate to maintain the PERS survivor annuity, to ensure wife's continued benefit from the pension. *See Stokes and Stokes*, 234 Or App 566, 579, 228 P3d 701 (2010) (it was appropriate that wife's interest in husband's military pension be protected by the provision of survivor benefits in an amount sufficient to cover wife's share of the marital portion of the pension). Thus, the present value of the marital portion of the PERS survivor annuity, net of wife's share of its cost, or $177,166, should be attributed to wife in the property division.

We turn to the Waldport farm. Husband acquired his interest in the farm during the marriage. Accordingly, it is a marital asset subject to a presumption of equal contribution. *Kunze*, 337 Or at 134. Husband argues that wife's contribution to the acquisition of the property does not exceed

25 percent and that her share should therefore be limited to 25 percent of the property's value. He contends further, that wife should be compensated for that interest from other marital assets, so as to avoid entangling the parties and so that husband can continue to live out his life on the property.

The evidence is that the parties lived on the property during most of the marriage and that wife contributed equally through her homemaking efforts, providing assistance to husband's aunt and with farm chores. Husband has not rebutted the presumption of equal contribution. We conclude, accordingly, that wife is correct that she is entitled to share equally in the value of the farm property.

Because the trial court determined that the property should be sold, it did not attempt to assign a value to the property. Although the evidence shows that, if husband were to keep the property, he would continue to live in one of the structures, the parties appear to agree that the structures would likely be torn down if the property were sold, and that the marketable value of the property is as bare land with a home site.

On *de novo* review, we conclude that wife's expert provided a more persuasive opinion of the market value of the property, and we therefore accept the low end of her range, $199,000, as the value of the property. We agree with husband that it makes sense for husband to continue to reside in one of the structures on the real property rather than to sell the property and find replacement housing elsewhere. The record shows that taking care of his aunt and managing the farm is husband's life. In light of husband's age and the fact that the real property will continue to be his home, we conclude that it is just and proper that husband retain his interest in the farm free of any interest by wife.

Wife complains that such a division is not just and proper, because it leaves husband as the sole owner of the parties' primary asset. In making that argument, however, wife ignores her not insignificant interests in the survivor annuities. In fact, with husband's retention of the real property free of any interest by wife, his share of the total marital assets is approximately $352,863, or approximately $75,000 less than wife's.

■      We turn to the life insurance policies and credit union account. Husband contends that the cash surrender values of three insurance policies and a credit union savings account, all acquired during the marriage with funds from the monthly military pension benefit, are not marital assets, and for that reason should be awarded to him without valuation, and that the trial court therefore erred in including them in the property division. We disagree. Because the policies and the funds in the credit union account were acquired during the marriage, they are marital assets and, as such, are subject to the rebuttable presumption of equal contribution. *Kunze*, 337 Or at 133. Husband makes no contention that the presumption of equal contribution has been rebutted. Accordingly, we conclude that the trial court correctly concluded that the policies and the credit union account should be treated as marital assets and divided equally between the parties.

■      That leaves the issue of spousal support. Husband asserts that wife is not entitled to any spousal support, because her income from employment allows her to live in a manner that is not overly disproportionate to that enjoyed during the marriage. In light of her relatively young age, husband asserts, wife's income will likely increase, and she has the potential to achieve a higher standard of living over the course of her remaining working years.

We agree with the trial court that, in light of the length of the marriage and the disparity in the parties' incomes, it is just and equitable for husband to pay monthly spousal support of $500, indefinitely. ORS 107.105(1)(d)(C).

Reversed and remanded with instructions to enter judgment consistent with this opinion; otherwise affirmed.