ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ADRIÁN L. TORRES GUERRERO<br><br>Parte Apelante<br><br><br>v.<br><br><br>JESSIAN RESTO ROLDÁN<br><br>Parte Apelada | KLAN202400363 | *Apelación*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E DI2015-0886<br><br>Sala: 503<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de mayo de 2024.

Compareció ante este Tribunal la parte apelante, el Sr. Adrián L. Torres Guerrero (en adelante, el "señor Torres Guerrero" o el "Apelante"), mediante recurso de apelación presentado el 11 de abril de 2024. Nos solicitó la revocación de la *Resolución sobre Pensión Alimentaria* dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, el "TPI"), el 14 de noviembre de 2023, notificada y archivada en autos el 27 de noviembre de 2023.[1] Dicho dictamen fue objeto de una "**Urgente Moción Solicitando Reconsideración**" interpuesta por el señor Torres Guerrero, la cual fue declarada "No Ha Lugar" mediante *Resolución* de 11 de marzo de 2014, notificada el 13 de marzo de 2024.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución sobre Pensión Alimentaria*.

---

[1] Por tratarse de un dictamen que pone fin a la controversia relacionada con la pensión alimentaria, aun cuando fue titulado Resolución, el dictamen impugnado es final por lo que el recurso adecuado para recurrir de ella es la apelación. Figueroa v. Del Rosario, 147 DPR 121, 129 (1998).

**I.**

El caso de autos se originó el 29 de enero de 2021 con la presentación de una "**Solicitud de Revisión de Pensión**" por parte de la Sra. Jessian Resto Roldán (en adelante, la "señora Resto Roldán" o la "Apelada") en contra del Apelante. En respuesta a ello, el 10 de enero de 2022, el TPI emitió una *Resolución* mediante la cual le impuso al señor Torres Guerrero el pago de una pensión alimentaria provisional de $514.45. De igual manera, determinó que al Apelante le correspondía satisfacer el 40% de los gastos escolares. Luego de varios tramites procesales, el 13 de noviembre de 2023, la examinadora de pensiones alimentarias, la Sra. Rosani Rodríguez Marrero (en adelante, "la señora Rodríguez Marrero"), presentó el "**Informe Sobre Pensión Alimentaria Permanente**". A través de este escrito, realizó las siguientes determinaciones de hechos:

El 29 de enero de 2021, se presentó moción en la cual se solicitó revisión de pensión alimentaria por la parte custodio, para beneficio de la menor, Kihomi Torres Resto.

La madre tiene custodia de facto de la menor.

El ingreso y deducciones de la parte custodio son los que surgen de la Hoja de Trabajo que se acompaña, la cual forma parte integral de este Informe. La parte custodio presentó:

Planilla de Información Personal y Económica (PIPE)

Talonario de pago

La parte custodio reclama los siguientes gastos suplementarios los cuales fueron considerados:
- Vivienda- la Sra. Resto reclama $684.54 y viven o ocupantes
- Educación privada
    - Matrícula- $700.00 anual
    - Mensualidad y almuerzo- $430.00 mensual
    - Efectos escolares, materiales escolares, cuotas y gastos requeridos por la escuela- le corresponde al padre aportar el 59%
- Actividades extracurriculares consentidas por ambos
    - Gimnasio- le corresponde al padre aportar el 59%
    - Clases de baile- le corresponde al padre aportar el 59%

El ingreso y deducciones de la parte no custodio son los que surgen de la Hoja de Trabajo que se acompaña y la cual forma parte integral de este Informe.

La parte no custodio presentó:

Planilla de Información Personal y Económica (PIPE).

Talonario de pago.

La parte no custodio, se desempeña como Militar, pertenece a U.S. Armed Forces/ Navy.

[…]

Basándose en estas determinaciones de hechos, recomendó que se impusiera al Apelante una pensión alimentaria de $1,339.20 mensuales a partir del 16 de octubre de 2022. También sugirió que el señor Torres Guerrero se hiciera cargo del 59% de los gastos escolares incluyendo uniformes, efectos escolares, materiales y libros. Igualmente, expresó que el Apelante debía satisfacer el 59% de las actividades extracurriculares consentidas por ambos, las cuales en ese momento eran gimnasio y clases de baile. Así las cosas, el 14 de noviembre de 2023, el TPI emitió una *Resolución sobre Pensión Alimentaria*, a través de la cual acogió todas las recomendaciones contenidas en el aludido Informe.

Posteriormente, el 12 de diciembre de 2023, el Apelante presentó "**Urgente Moción Solicitando Reconsideración**" a través de la cual alegó que la señora Rodríguez Marrero se equivocó en el cómputo de la escuela de la menor, al recomendar que se incluyera el beneficio del *Basic Allowance for Housing* (en adelante, "BAH", por sus siglas en inglés) y al no resolver el asunto del retroactivo. Especificó que su hija se encuentra matriculada en una escuela cuya mensualidad es de $345.00 y no de $430.00 mensuales. Así pues, solicitó que el caso fuera devuelto a la Examinadora de Pensiones Alimentarias para que se realizara nuevamente el cómputo de la escuela o, en su defecto, que se elimine dicha partida por no haber sido consultada y se descuente del ingreso bruto y neto el beneficio del BAH.

Oportunamente, el 22 de enero de 2024, la señora Resto Roldán presentó la "**Oposición a Solicitud de Reconsideración**" mediante la cual expresó que los gastos educativos consisten en $1,000.00 de matrícula, $500.00 de cuota anual y $287.50 de mensualidad, por lo que no tiene reparo en que se realicen los ajustes que correspondan al pago mensual de la pensión alimentaria. No obstante, argumentó que es contrario a

derecho y perjudicial para la menor que no se considere como ingreso lo que el Apelante recibe mensualmente en concepto del BAH. Igualmente expresó que los "military allowances" deben considerarse ingresos y por consiguiente, incluirse en el cálculo para fijar una pensión alimentaria.

El 1 de marzo de 2024, la Examinadora de Pensiones Alimentarias presentó el "**Informe sobre referido a la EPA**". En su escrito, indicó que se sostiene en las determinaciones que realizó anteriormente respecto al beneficio de BAH. Asimismo, aclaró que a quien le corresponde establecer si existe deuda o crédito es a la Administración para el Sustento de Menores (en adelante, "ASUMe"). Por último, y respecto al cambio de institución educativa, expresó que no recomendaba la modificación de la pensión alimentaria puesto que la diferencia entre lo que el Apelante pagaba antes y ahora es de sesenta y dos (.62) centavos mensuales. Finalmente, el 11 de marzo de 2024, el TPI declaró "No Ha Lugar" la "**Urgente Moción Solicitando Reconsideración**".

Inconforme con lo anteriormente resuelto, el Apelante acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló el siguiente error:

> **ERRÓ EL HONORABLE TRIBUNAL AL ACOGER LA RECOMENDACIÓN DE LA OFICIAL EXAMINADORA DE PENSIONES ALIMENTARIAS AL NO HACER JUSTICIA AL DEMANDANTE APELANTE Y DEDUCIR DEL INGRESO LA CONSECIÓN [sic] POR CONCEPTO DEL "BAH" QUE RECIBE EL DEMANDANTE-APELANTE COMO PARTE DE SU EMPLEO CON EL NAVY Y SOBRE EL CUAL SE PRESENTÓ EVIDENCIA DE QUE ES UTILIZADO EN SU TOTALIDAD PARA EL PAGO DE HIPOTECA. AL ASÍ HACERLO ACTUÓ CON PREJUCIO [SIC] PREJUICIO Y PARCIALIDAD.**

El 29 de abril de 2024, la señora Resto Roldán presentó "**Oposición a Legajo de Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es doctrina reiterada en nuestra jurisdicción que la obligación de los padres de proveerles alimentos a sus hijos menores de edad está revestida

del más alto interés público, con miras a salvaguardar el mejor bienestar del menor. Díaz Rodríguez v. García Neris, 208 DPR 706, 717 (2022); Umpierre Matos v. Juelle Arbello, 203 DPR 254, 265 (2019); Ríos v. Narváez, 163 DPR 611, 618 (2004). Esta obligación de brindar alimentos es parte esencial del derecho a la vida, protegido por el Artículo II, Sección 7 de la Constitución de Puerto Rico. James Soto v. Montes Díaz, 213 DPR ___ (2024); 2024 TSPR 27; Torres Rodríguez v. Carrasquillo Nieves, 177 DPR 728, 738 (2009). Su génesis está cimentada en principios generalmente reconocidos de solidaridad humana, asociados al derecho natural y unida por imperativo de los vínculos familiares. Maldonado v. Cruz, 161 DPR 1, 13 (2004). El deber de alimentar a los hijos menores de edad está regulado por varias fuentes estatutarias, cuyo fundamento cardinal lo es la relación paterno-filial. "*El derecho de los menores a reclamar alimentos, la obligación de los padres de proveerlos y la interpretación de los tribunales para concederlos deben estar enmarcados en la relación paterno-filial legalmente establecida; no supeditada a uno u otro artículo del Código Civil.*" Chévere v. Levis, 150 DPR 525, 539 (2000) (énfasis en el original).

El Artículo 653 del Código Civil de Puerto Rico define alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". 31 LPRA sec. 7531. La referida disposición estatutaria aclara que cuando el beneficiario de los alimentos es menor de edad, éstos comprenden su educación, las precauciones adecuadas según las costumbres y las circunstancias de su entorno familiar y social, así como los gastos extraordinarios para atender sus necesidades personales especiales. Íd.

Con el objetivo de lograr el cumplimiento con el pago de la obligación de pensión alimentaria, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la "Ley Orgánica de la Administración para el Sustento de Menores", según enmendada, 8 LPRA sec. 501 *et seq.* (en adelante, "Ley de ASUMe"). La antecitada ley reitera los principios

adoptados por la jurisprudencia al disponer que los padres tienen un deber continuo de sustento y manutención de sus hijos menores de edad y que a base de ello, los tribunales están facultados para ordenarles pagar una suma justa y razonable por concepto de pensión alimentaria. 8 LPRA sec. 503. Así pues, las herramientas allí establecidas tienen una naturaleza inherentemente forzosa, cuyo fin ulterior es que los alimentantes respondan con sus obligaciones alimentarias. De León Ramos v. Navarro Acevedo, 195 DPR 157, 176 (2016).

En consonancia con lo anterior, el monto de la pensión alimentaria se establece tomando en cuenta las necesidades del beneficiario y los recursos económicos disponibles del alimentante, es decir según su capacidad financiera. Lloréns Becerra v. Mora Monteserín, 178 DPR 1003, 1017 (2010). Para calcular la capacidad económica de cada persona obligada a pagar alimentos, es esencial considerar todos los ingresos que recibe, incluso aquellos que no están detallados en la planilla de información personal. Argüello v. Argüello 155 DPR 62, 72 (2001). La referida pieza legislativa define los conceptos ingreso e ingreso neto de la siguiente manera:

[…]

Ingresos — Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico; del Gobierno de Estados Unidos de América, el Distrito de Columbia; las Islas Vírgenes de Estados Unidos de América; o cualquier territorio o posesión sujeta a la jurisdicción de Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables. Además, de cualquier estado de Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad. Asimismo, contempla los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, **emolumentos o compensación derivados de cualquier procedencia**, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de

cualquier persona natural o jurídica. 8 LPRA sec. 501 (20). (énfasis suplido).

Ingreso neto — Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente. 8 LPRA sec. 501 (19).

[…]

Además, establece que, en relación con la fijación o modificación de pensiones, es mandatorio que el Tribunal determine el monto utilizando las guías adoptadas para ello. 8 LPRA sec. 518 (b). En virtud de ello, el Reglamento Núm. 8529 de 30 de octubre de 2014, según enmendado, conocida como las "Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico" (en adelante, las "Guías"), ofrecen definiciones sustancialmente equivalentes a las de la Ley de ASUME, *supra*.[2] En su parte pertinente, describe el ingreso como cualquier tipo de ganancia monetaria, beneficio, rendimiento, emolumentos o **compensación derivada de cualquier procedencia**. *Véase*, Art. 7 (16) de las Guías. Asimismo, define el ingreso bruto como "la totalidad de los ingresos con los que cuentan la persona custodia y la persona no custodia con anterioridad a descontarse las deducciones mandatorias y las deducciones aceptadas". Íd., Art. 7 (17). Igualmente, definen el ingreso neto como aquellos ingresos disponibles al alimentante después de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Íd., Art. 7 (19) de las Guías.

En esa misma línea, las referidas Guías establecen que las deducciones aceptadas son los descuentos o pagos relacionados con planes de retiro, asociaciones, uniones, federaciones voluntarias, primas

---

[2] Somos conscientes de que el 15 de febrero de 2024 se aprobó el Reglamento Núm. 9535 de la Administración para el Sustento de Menores, conocido como las "Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico", el cual, deroga el Reglamento Núm. 8529, según enmendado. No obstante, al momento en que se fijó la pensión alimentaria en controversia estaban vigentes las disposiciones del Reglamento Núm. 8529, *supra*.

de seguro de vida, seguros contra accidentes o servicios de salud accesibles que pueden ser restados del ingreso bruto cuando se demuestre que el alimentista de alguna manera se beneficia de ellos. Íd., Art. 7 (8). Mientras tanto, las deducciones mandatorias son descuentos obligatorios por concepto de contribuciones sobre ingresos, seguro social, *medicare*, cuotas sindicales, asociaciones profesionales de colegiación obligatoria y otras deducciones requeridas por ley. Íd., Art. 7 (7) de las Guías.

De las normas citadas con anterioridad, se deduce el procedimiento necesario para determinar la capacidad financiera del alimentista. Martínez v. Rodríguez, 160 DPR 145, 156 (2003). En primer lugar, se debe calcular lo que las Guías denominan "ingreso bruto", lo que implica examinar todas las fuentes de ingresos disponibles para el proveedor de alimentos. Íd. Una vez completado este análisis, se procede a calcular el ingreso neto, el cual se obtiene luego de realizar las correspondientes deducciones. El resultado de este cálculo servirá como base para establecer la pensión alimentaria. Íd. Así pues, este proceso asegura una evaluación exhaustiva y justa de la capacidad económica del alimentista, antes de fijar la cantidad de la pensión alimentaria.

**B.**

El BAH es una compensación destinada a cubrir los gastos de residencia de los militares cuando el gobierno no les ha proporcionado vivienda. 37 USC sec. 403 (a) (1). Entre los factores que se toman en consideración para establecer el monto de la asignación se encuentran los siguientes: (1) ubicación del militar, (2) el nivel de pago en el que se encuentra y (3) la existencia o inexistencia de dependientes. Íd. Sus tasas se establecen mediante el análisis del costo de alquiler de propiedades en cada ubicación geográfica. 37 USC sec. 403 (b) (1). Esta compensación tiene como propósito proveer un respaldo financiero a los miembros de las fuerzas armadas y a sus familias, fomentando así la estabilidad económica. Igualmente, es menester destacar que indistinto de las excepciones o limitaciones legales que puedan existir, esta compensación en mandatoria. 37 USC sec. 403 (a).

Actualmente, no hemos hallado expresión del Tribunal Supremo de Puerto Rico en cuanto a si los *allowances* concedidos a los miembros de las fuerzas armadas deban ser contabilizados o no como ingresos para efectos del cálculo de una pensión alimentaria. No obstante, al dirigirnos a la normativa reconocida en los Estados Unidos notamos una tendencia a reputar como parte de los ingresos de un alimentante el BAH.

A modo de ilustración, en Patterson v. Patterson, el Tribunal de Apelaciones de Arizona afirmó que el valor de la vivienda militar podría ser parte del ingreso bruto del progenitor, a los efectos del cálculo de la manutención si el valor es significativo y reduce los gastos personales esenciales de éste. Patterson v. Patterson, 248 P.3d 204, 207 (2011). Esto es así, puesto que los beneficios que un padre alimentante recibe que, a su vez, reducen sus costos de vida deben incluirse como parte de su ingreso para propósitos del cálculo de una pensión alimentaria a favor de un hijo menor de edad. Íd. Similarmente, el Tribunal de Apelaciones Civiles de Alabama manifestó que no es un error incluir "military allowances" al cálculo de los ingresos brutos para establecer las pensiones alimentarias. Barnes v. State ex rel. Cassady, 636 So.2d 425, 427 (1994). Asimismo, la Corte de Apelaciones del estado de Oregón indicó que todas las fuentes de ingresos que están disponibles para los progenitores, independientemente de si están sujetas a impuestos, deben tenerse en cuenta al establecer la obligación de manutención de los menores. In re Marriage of Stokes, 228 P.3d 701, 705 (2010). Por último, el Tribunal de Apelaciones del Cuarto Distrito de California también concluyó que las asignaciones militares para vivienda y comida, que no están sujetas a impuestos ni son embargables, pueden considerarse parte del ingreso bruto para estimar el monto a pagar por concepto de pensión alimentaria de los hijos y del cónyuge. In re Marriage Of Stanton, 118 Cal.Rptr.3d 249, 257 (4to Dis. 2010). Como vemos, existe un consenso en la jurisdicción estatal y federal de los Estados Unidos en que se deben considerar los beneficios militares, como el BAH, dentro del cálculo de las pensiones alimentarias.

Finalmente, y por su pertinencia a la controversia que nos ocupa, destacamos lo expresado en el artículo "**Resolving Child Support Issues Beyond the Scope of AR 608–99**"*,* publicado en la reconocida Military Law Review.

> In general, all of a soldier's and retiree's pay and **allowances should be considered as income for purposes of setting the support obligation**. [...] Many soldiers live in government accommodations and eat in the mess hall for free. This "in kind" income is usually not obvious to civilian practitioners and courts, and it may justify an upward adjustment in support owed.
>
> […]
>
> These items, however, are not taxable. **If state guidelines are based on gross pay, attorneys should argue that the soldier's income should be adjusted upward to account for the increased value of nontaxable income**. M.J. Connor, Resolving Child Support Issues Beyond the Scope of AR 608–99*,* 132 Mil. L. Rev. 67, (1991) (énfasis suplido).

### III.

En el presente caso, el señor Torres Guerrero nos solicita que revoquemos la determinación del TPI mediante la cual se establece que el BAH debe ser considerado como parte de su ingreso para propósitos del cálculo de la pensión alimentaria a favor de su hija menor de edad.

Como único señalamiento de error, el Apelante plantea que el foro primario erró al acoger la recomendación de la oficial examinadora de pensiones alimentarias y no deducir del ingreso la concesión por concepto del BAH, a pesar de que presentó evidencia de que dicho beneficio es utilizado en su totalidad para el pago de hipoteca. No nos convence su postura. Veamos.

Surge del expediente ante nuestra consideración que el señor Torres Guerrero es el padre no custodio de la menor K.T.R y que éste se desempeña como militar de la Marina de Guerra de los Estados Unidos (en adelante, "Navy"). Dentro de los beneficios que obtiene como militar, se incluye el BAH. En específico, éste recibe $2,034.00 de compensación para el pago de su vivienda. Como parte de un proceso de revisión sobre la pensión alimentaria establecida a favor de la menor, el 13 de noviembre de 2023, la examinadora de pensiones alimentarias recomendó que se le

impusiera al Apelante el pago de $1,339.20 mensuales por concepto de alimentos. Para arribar a ese número, incluyó el BAH como parte de su ingreso que recibe del Navy para costear su vivienda. Ese es, precisamente, el eje de la controversia que nos ocupa. En esencia, el señor Torres Guerrero argumenta que el TPI se equivocó al determinar que el BAH debía considerarse como un ingreso cuando se presentó evidencia que el mismo era utilizado en su totalidad para el pago de una hipoteca.

Conforme hemos adelantado, entre los deberes y facultades de los progenitores, se encuentra el de alimentar a sus hijos y proveerles lo necesario para su desarrollo y formación integral. 31 LPRA sec. 7242. La alimentación abarca todo lo necesario para la subsistencia de una persona como vivienda, vestimenta, recreación y asistencia médica. 31 LPRA sec. 7531. Cuando el alimentista es menor de edad, los alimentos también comprenden su educación y las atenciones de previsión acomodadas a las circunstancias de su ámbito familiar. 31 LPRA sec. 7531.

En ese marco, la pensión alimentaria se calcula considerando las necesidades del menor y los recursos económicos del alimentante. Lloréns Becerra v. Mora Monteserín, *supra*, pág. 1017. Así pues, es esencial considerar todos los ingresos que recibe el progenitor alimentante para determinar su capacidad económica. Argüello v. Argüello, *supra*, pág. 72. Tanto la Ley de ASUMe, *supra*, como las Guías, *supra*, definen el ingreso, en su parte relevante, **como la compensación proveniente de cualquier origen**. 8 LPRA sec. 501 (20); Artículo 7 (16) de las Guías. Para determinar la aptitud financiera de un alimentante es necesario sumar todas las fuentes de ingresos disponibles y restarle las cantidades establecidas por ley para obtener el ingreso neto. Martínez v. Rodríguez, *supra*, pág. 156. Este último será el punto de partida para la imposición de la pensión alimentaria. Íd.

Las deducciones aceptadas son aquellos descuentos relacionados con planes de retiro, seguros y servicios de salud que pueden sustraerse del ingreso bruto si se demuestra que el alimentista se beneficia de ellos, mientras que las deducciones mandatorias son reducciones por concepto de contribuciones sobre ingresos, seguro social, *medicare*, cuotas

sindicales, asociaciones profesionales de colegiación obligatoria y otras deducciones requeridas por ley. *Véase*, Art. 7 (7) de las Guías.

Un análisis detenido de las definiciones del término "ingreso" provistas por la Ley de ASUMe, *supra*, y las Guías, *supra*, nos lleva a la conclusión de que el alcance de este concepto para efectos de calcular la pensión alimentaria es extremadamente amplio. Claro está, ello está cimentado en proteger los mejores intereses del menor. Por consiguiente, entendemos imperativo incluir el BAH en este cálculo, ya que el ingreso se define como **cualquier fuente de dinero o ganancia independientemente de su procedencia**. Aunque nuestro ordenamiento permite ciertas deducciones a las pensiones alimentarias, los "military allowances", como el BAH, no se encuentran en esta lista. Por tanto, excluir esta compensación del resto de los ingresos, de manera absoluta y sin justificación, significaría ignorar la importancia que revisten en nuestro ordenamiento jurídico las pensiones alimentarias. Esto pues, el referido beneficio incrementa la capacidad económica del Apelante al no tener que incurrir en un gasto que, de otra manera, tendría que cubrir con su peculio. Claramente, esto representa una ventaja financiera significativa en comparación con cualquier otra persona en circunstancias similares, ya que el Apelante no tiene que utilizar parte de sus recursos para costear su vivienda. Entiéndase, dicho beneficio implica un ahorro para el señor Torres Guerrero. A nuestro juicio, el hecho de que este último destine todo el dinero que se le otorga por concepto del BAH para el pago de la hipoteca es irrelevante, ya que es una fuente de ingreso o ganancia que, para propósitos de la Ley de ASUMe y las Guías, debe ser imputada como ingreso del Apelante.

Por último, el señor Torres Guerrero señala que otra razón para no incluir la cuantía del BAH como ingreso es el hecho de que esta compensación goza de exenciones contributivas. Acoger esta teoría equivaldría a pasar por alto una fuente de ingresos de los progenitores, lo que conduciría a un cálculo de pensión alimentaria que no reflejaría la

realidad económica del alimentante, lo cual es parte de la base de dicho obligación.

Aunque el BAH tenga un trato fiscal preferencial, esto no debería ser impedimento para incluirlo como un ingreso a tenerse en cuenta a la hora de establecer el monto de la pensión alimentaria. Esto se debe a que dentro del contexto de las responsabilidades de alimentación de los progenitores para con sus hijos, el concepto de "ingreso" suele tener un alcance más amplio que en el ámbito contributivo. Sobre el particular, y muy similarmente a lo resuelto en los Estados Unidos, aunque los "military allowances" estén excluidos del ingreso bruto para efectos de las contribuciones federales, ello no implica su exclusión en el cómputo de una pensión alimentaria. *Véase*, In the Matter of Stokes*,* 228 P.3d 701 (2010).

De manera similar, en In re Marriage of McGowan*,* 638 N.E, 2d. 695, 697 (1994), la corte apelativa del estado de Illinois incluyó este tipo de "allowances" como parte del cómputo de una pensión alimentaria y determinó que la no tributación de éstos no implica su exclusión para propósitos de dicho cómputo. De hecho, se estableció que el término "ingreso" para propósitos contributivos dista del sentido que se le debe adjudicar en el ámbito de una pensión alimentaria. Es decir, no se desprende del expediente circunstancia alguna que conduzca a descartar la determinación apelada del TPI. Concluimos, pues, que el foro primario no abusó de su discreción al determinar que el BAH que recibe el Apelante debe ser considerado como parte de sus ingresos para propósitos del cálculo de la pensión alimentaria. Tal y como hemos adelantado, nuestra conclusión se ajusta a la tendencia jurisprudencial adoptada en los distintos estados de la Nación y se atempera al fin ulterior de nuestra normativa jurídica en materia de alimentos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *confirmamos* la *Resolución sobre Pensión Alimentaria*, en tanto estableció que el BAH constituye un ingreso

que debe tomarse en cuenta para calcular la pensión alimentaria a favor de la menor de edad.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones