Argued and submitted May 16, reversed and remanded with instructions in part;
otherwise affirmed October 1, 1997

In the Matter of the Marriage of

Candace Dorrough REICH,
*Respondent,*

*and*

David Lee REICH,
*Appellant.*

(94 DO-0092; CA A90418)

946 P2d 319

George W. Kelly argued the cause and filed the brief for appellant.

Carl W. Hopp, Jr., argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Father appeals from a judgment of dissolution of marriage. He raises five assignments of error. We write to address only his assignments of error that pertain to the issues of property division and child visitation. We review *de novo*, ORS 19.125(3), and modify the judgment with respect to those issues.

The parties married in February 1988 and were separated in November 1994. At the time of the dissolution of their marriage, father was 44 years old and mother was 40. They have two children. Mother is a commissioned military officer employed by the United States Public Health Service (PHS) and was so employed during almost the entire marriage. Mother will be eligible for retirement benefits from her employment in the future, but her interest in those benefits will not vest until she completes a minimum of 20 years' service. In dividing the marital assets, the trial court assigned no value to mother's pension because it had not vested.

■ The evidence is undisputed that mother's retirement plan with the Public Health Service is a "defined benefit plan." *See also* Brett R. Turner, *Equitable Distribution of Property* 319-18, § 6.06, and 377, § 6.13 (2d 1994). In *Richardson and Richardson*, 307 Or 370, 377, 769 P2d 179 (1989), the court held that, even though a defined benefit plan had not vested at the time of the parties' separation, the interest in the pension acquired before the separation was marital property. It follows that the present value of mother's pension must be considered.

■ The proper method of valuing an interest in a defined benefit plan is to determine the "actuarial present value." *Richardson*, 307 Or at 378. The present value is by definition that amount of money presently needed to purchase an annuity that would pay a particular monthly amount for the life expectancy of the retired employee. *Id.* To calculate the present value of this kind of marital asset that accrued during the marriage, the "time rule" is used. That rule requires multiplying the present value by a fraction, the numerator of which is the years or months of service during which the spouses lived together as a marital unit, the denominator of

which is the total years of service required to receive the retirement benefit. *Id.* at 379; *see also* Turner, above at 337, § 6.10.

The record includes evidence of what the actuarial present value of mother's retirement would be based on seven years, nine months of service with both 20 and 30 years of total service. Mother introduced into evidence the "Retirement and Separation" section of the Public Health Service's "Commissioned Officer's Handbook." It says that retirement from PHS is

> "structured on the basis of a 30-year career, at which time an officer will have earned maximum retirement benefits. Officers have the option of *requesting permissive retirement if the officer has at least 20, but less than 30 years of active service. The request must be reviewed by the retirement board and approved by the Surgeon General.* If an officer retires with less than 30 years of creditable service, he/she will receive reduced retirement benefits.
>
> "* * * * *
>
> "In addition, *the program to which an officer is assigned must be agreeable to the early retirement,* and document the fact that such a retirement would not adversely affect the operation of the program." (Emphasis supplied.)

After 30 years' service, an officer may retire without obtaining permission from the PHS.

■  At the end of 30 years' service, mother will be 62 years old. In light of that fact and the fact that the approval of retirement after 20 years is discretionary with PHS, we hold that the more equitable denominator for the formula is 30. Based on that denominator, the present value of mother's pension is $23,360.[1] In making its property division, the trial court divided the proceeds from the sale of the family home that was to occur. On remand, the trial court is instructed to modify that division by awarding father an additional amount of $11,680 or by entering judgment in his favor in that amount.[2]

---

[1] This figure was supplied by father's expert witness and was based on the highest pay grade mother attained during the marriage. Mother's expert did not calculate retirement benefits based on 30 years of service.

[2] By awarding father an immediate offset, as distinguished from a percentage of each retirement payment as mother receives it, the pension issues between the

The trial court awarded sole legal custody of the parties' children to mother, granting visitation to father. Father's visitation is on alternate weekends, ending on Sunday evening, and includes mid-week visits on Wednesday between 6:00 p.m. and 8:00 p.m. Father contends that during most of the children's lives, he was the primary care giver and that mother was the bread winner. He argues therefore that he ought to have increased visitation, and he requests that we modify the judgment to include Wednesday overnight visitations.

Before the trial, mother proposed in her UTCR statement that father receive the overnight Wednesday visitations that he seeks. Notwithstanding her pretrial position, she argues on appeal that the trial court set visitation in the best interests of the children and that its decision should be left undisturbed. Also, we note that an independent custody evaluator recommended that father have visitation on alternate weekends, including Sunday and Wednesday overnights. Based on our *de novo* review of the record, we agree with father's position. Visitation is to include Wednesdays, beginning at 6:00 p.m. and ending when father drops the children off at school, preschool or the day care provider on Thursday mornings. The drop-off should be no later than 9:00 a.m. if it is a nonschool day, and before school starts if it is a school day.

The remainder of father's assignments of error do not warrant discussion, and we agree with the trial court's resolution of those issues. Accordingly, the judgment as entered by the trial court should continue in all respects except as modified by this opinion.

Reversed and remanded for entry of modified judgment awarding father an additional $11,680 in the property

parties are immediately and finally resolved. Mother argues that she may never actually receive a benefit, even though she must pay father present dollars for his interest in the pension. On the other hand, mother could elect to seek retirement after only 20 years and may live longer than the actuarial probability on which the calculation is based. In that case, mother would receive a windfall. *See* Turner, above at 347-50, § 6.10 (discussing the benefits and risks to both parties to an immediate offset distribution of pension assets). There is no persuasive evidence that suggests that mother could not continue working for PHS and receive benefits. Under the circumstances, we think it is more equitable to order an immediate award.

division and awarding father visitation with children on Wednesday nights; otherwise affirmed. Costs to father.