Argued and submitted May 14, remanded in part with instructions; otherwise
affirmed September 26, 2001

In the Matter of the Marriage of

Robert Eugene KISER,
*Respondent,*

*and*

Patricia Lee KISER,
*Appellant.*

15-99-05543; A110070

32 P3d 244

Jeffrey E. Potter argued the cause for appellant. With him on the briefs was Gardner, Honsowetz, Potter, Budge & Ford.

Marc D. Perrin argued the cause for respondent. With him on the brief was Marc D. Perrin, P. C.

Before Landau, Presiding Judge, and Haselton and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Wife appeals from a dissolution judgment, seeking modification of the spousal support award and clarification of details regarding the division of husband's federal retirement benefits. We affirm the spousal support award and remand with instructions regarding the proper division of retirement benefits.

The parties were married for 30 years. At the time of trial, husband was 49 years old and wife was 51 years old. They have four children, two of whom are under 21 years old and whose custody was awarded to wife. Wife was the primary homemaker and parent throughout the marriage; she worked outside of home only sporadically, primarily on a part-time basis so that she could be with the children when they were not in school. At the time of trial, she was employed full time as a salesperson at a floor covering store, earning a gross income of $24,000 per year with no benefits.

Husband is a regional manager at the Bonneville Power Administration, where he has worked for the past 27 years; his current salary is approximately $92,000 per year plus retirement, life, and health insurance benefits. As a federal employee, husband participates in the Civil Service Retirement System (CSRS), under which he will be entitled to a monthly benefit of an amount to be calculated at retirement based on the length of his federal service and the average of his three highest salary years. This type of plan is called a "defined benefit" plan, as opposed to a "defined contribution" plan, under which benefits derive from the amount of contributions and their earnings. Husband does not plan to retire for another 10 or 11 years. Further, husband has the option of increasing the monthly benefit at retirement by purchasing credits for the three years and 11 months he served in the military when the couple was first married. Husband also may elect a survivor annuity option, which would allow wife to continue receiving retirement benefits if husband predeceases her. Finally, husband has a second federal retirement benefit called a "Thrift Savings Plan." That is a retirement savings and investment account administered

by the Federal Retirement Thrift Investment Board. Its contribution and benefit structure is similar to a 401(k) retirement plan in that it is a defined contribution plan where benefits are based on contributions and their earnings.

The trial court awarded spousal support to wife in the amount of $1,500 per month for six years and $1,000 per month for four years thereafter. On *de novo* review, and in light of our disposition of the retirement benefits issues, we find the amount and duration of that award to be "just and equitable." ORS 107.105(1)(d) (1997). Neither the bench nor bar would benefit from discussion of that issue.

At trial, the parties agreed that the retirement benefits should be divided equally. The trial court awarded wife "fifty percent (50%) of [husband's] Civil Service Retirement System benefits and Thrift Savings Plan benefits as of the date of entry of this decree." The court retained jurisdiction to implement division of the retirement accounts and directed husband's attorney to "prepare the appropriate orders to divide the retirement accounts in accordance with applicable provisions of federal regulations and the Internal Revenue Code." There is no evidence in the record that husband's attorney or any other person ever prepared such an order or that a judge signed one.

On appeal, wife argues that the ruling is defective in four respects.

First, wife requests that we modify the judgment to specify when her 50 percent of the Thrift Savings Plan is to be distributed and that she is entitled to earnings on her portion that accrue between the date of the dissolution judgment and distribution. The trial court held she was entitled to 50 percent of retirement benefits "as of the date of this decree." As applied to the Thrift Savings Plan, we understand that language to mean she is entitled to half of the total account balance accumulated under the plan as of the date of dissolution. That is an appropriate method of dividing defined contribution retirement plans. *See Caudill and Caudill*, 139 Or App 479, 481 n 1, 912 P2d 915 (1996). Because wife's portion may be immediately distributed on receipt of a qualifying order, *see* 5 CFR § 1653 (2001), we see no reason why payment should not be made as soon as administratively

feasible. We also agree that wife is entitled to interest on her portion of the plan that accrues between the date of dissolution and distribution. On remand, the trial court is directed to issue orders that so specify.

Wife next contends that the trial court erred because the language of the judgment is unclear about how to calculate and distribute wife's interest in the CSRS benefits. We agree that the court's award to wife of "50 [percent] of [husband's CSRS] benefits as of the date of entry of this decree" does not adequately explain how wife's interest is to be calculated or distributed. On remand, the trial court is directed to issue an appropriate order specifying wife's share of husband's CSRS annuity.

Husband suggests that the trial court should award wife 50 percent of the monthly payout he would receive if he retired at the date of dissolution. He argues that it is inappropriate to calculate wife's interest on the basis of benefits he will actually receive at retirement because that amount will, in turn, be calculated in part on the basis of potential salary increases husband earns after the dissolution, thus allowing wife a share of benefits that accrue after the divorce.

■ We decline to follow husband's suggested approach. We have repeatedly emphasized that, when retirement benefits have not matured and are thus not presently liquid, it is equitable to look to the value of the benefit at retirement, because "it is not proper to assume, for purposes of computing the value of these rights, that husband would immediately leave public service and * * * ignore the vested pension benefits." *Minnis and Minnis*, 54 Or App 70, 75, 634 P2d 259 (1981) (quoted in and followed by *Cunningham and Cunningham*, 74 Or App 311, 315, 702 P2d 1157 (1985)); *see also Reich and Reich*, 150 Or App 311, 314, 946 P2d 319 (1997) (same); *Mahaffey and Mahaffey*, 96 Or App 617, 621, 773 P2d 806 (1989) (same).

Husband's argument also ignores the straight-line appreciation of benefits under a defined benefit plan. *See Caudill*, 139 Or App at 483-84. This type of plan typically calculates retirement benefits by applying a given percentage to the applicable average salary at retirement; that product is then multiplied by the participant's total years of service

under the plan to determine the benefit at retirement. Thus, benefits actually accrue in equal increments for each year of participation in the plan. Awarding wife half of the marital portion[1] of benefits calculated at retirement is consistent with this straight-line valuation method.

For the foregoing reasons, a defined benefit plan such as husband's is not appropriately divided on the basis of the account balance or contributions made as of the date of dissolution. *Hester and Hester,* 122 Or App 147, 856 P2d 1048 (1993). Rather, such plans are divided on the basis of actuarial present value, *see, e.g., Richardson,* 307 Or at 378; *Reich,* 150 Or App at 313, or through a division of benefits as they are distributed, *see, e.g., Cave and Cave,* 85 Or App 336, 338, 736 P2d 215 (1987). Typically, the value of a nonparticipating spouse's interest in a defined benefit plan is determined as follows:

> "The proper method * * * is to determine the 'actuarial present value.' [That] value is by definition that amount of money presently needed to purchase an annuity that would pay a particular monthly amount for the life expectancy of the retired employee. To calculate the present value of this kind of marital asset that accrued during the marriage, the 'time rule' is used. That rule requires multiplying the present value by a fraction, the numerator of which is the years or months of service during which the spouses lived together as a marital unit, the denominator of which is the total years of service required to receive the retirement benefit." *Reich,* 150 Or App at 313-14 (citations omitted).

For several reasons, however, awarding wife a portion of the plan's actuarial present value may not be the best

---

[1] The "coverature" or "time rule" is typically used to calculate the "marital portion" of benefits under a defined benefit retirement plan. The marital portion is determined by multiplying the benefit to be divided by a fraction, the numerator of which is the years (or months) of service during which the couple were married and the denominator is the total years (or months) of employment. *Richardson and Richardson,* 307 Or 370, 379, 769 P2d 179 (1989); *Mahaffey,* 96 Or App at 621. Assuming husband retires at age 60 with 40 years of creditable service, 30 of which were earned during the marriage, the marital portion would equal 30/40ths, or 3/4, of his retirement benefit. Wife would then be entitled to 50 percent of that amount. This approach incorporates the straight-line appreciation characteristic of a defined benefit plan while ensuring that only the portion of that benefit attributable to the married years is divided between the parties. *See Caudill,* 139 Or App at 483-84.

in the present case. First, the parties' arguments to the trial court and on appeal assume that wife will receive a portion of husband's monthly retirement benefits as he receives them, thus providing wife with a steady income source throughout her own retirement. Second, no evidence of the plan's actuarial present value was presented to the trial court. Third, the trial court made no attempt to offset the value of the retirement plan as a whole against other assets in the property division. Therefore, the court on remand shall award wife 50 percent of the marital portion of husband's monthly CSRS payments as they become due, calculated so as to ensure that wife receives the marital portion of interest earnings that accumulate between the date of dissolution and distribution, or in some other fashion that the court deems to be just and equitable.

■       Wife also argues that the trial court erred in not including a requirement that husband elect a "former spouse survivor annuity" that would allow her to continue receiving CSRS benefits in the event of husband's death. *See* 5 USC § 8341(h) (2001). Husband does not contest the fairness of that election, but argues he should not have to pay for it because he will never receive any of its benefits.[2] Husband did, however, receive the benefit of wife's contribution as a wife, mother, and homemaker for 30 years of the marriage, during which time the benefits that would be subject to the survivor annuity accrued. Wife is therefore entitled to not only the income provided by those retirement benefits but also the security of access to that income throughout her retirement. Husband is assured that security by virtue of his participation in the plan, and, were the parties to remain married, wife would be entitled to survivor benefits automatically. Wife is therefore entitled to the maximum former spouse survivor benefit under husband's CSRS plan, and the cost of that annuity is to be split equally between the parties.

■       Finally, wife contends that the trial court erred in failing to require that the parties jointly purchase husband's military credits. Husband testified that the parties had

---

[2] If elected, survivorship benefits are paid for out of a monthly deduction from husband's benefits of 2.5 percent of the benefits up to $3,600 and 10 percent of the remainder.

intended to purchase those credits before the divorce, and the parties stipulated at trial that the cost of purchasing those credits be split by the parties. We can discern from the record no good reason why the court chose not to include an order to that effect in its dissolution judgment. All but five months of those military credits were earned during the marriage, and wife is entitled to the benefit of adding those years to the amount of time included in calculating the marital portion of the CSRS benefit. The option to purchase those credits is thus properly considered a marital asset regardless of the fact that they have not yet been purchased, and it is within the equitable powers of the court to order that that option be exercised so as to effectuate an accurate valuation of wife's interest in the CSRS benefits.[3]

Remanded with instructions to enter order requiring that the parties jointly purchase military service credits husband earned during the marriage and to divide husband's retirement benefits consistently with this opinion; otherwise affirmed.

---

[3] Technically speaking, the orders required to distribute to wife her share of the federal benefits at issue here are not appropriately labeled "Qualified Domestic Relations Orders." *See* 5 CFR § 838.803(a) (2001) (CSRS benefits); 5 CFR § 1653 (2001) (Thrift Plan). The dissolution judgment recognized the necessity of "appropriate orders to divide the retirement accounts in accordance with applicable provisions of federal regulations." We trust that, on remand, the trial court will honor that necessity. In assisting the trial court in that endeavor, the parties would be well advised to consult appropriate guidelines and the model language published in the regulations. *See, e.g.*, Appendix A to Subpart F of 5 CFR § 838 (2001); Appendix A to Subpart I of 5 USC § 838; 5 CFR § 1653 (2001); U.S. Office of Personnel Management, *A Handbook for Attorneys on Court-Ordered Retirement, Health Benefits, and Life Insurance* (1995); Gary A. Shulman, *Qualified Domestic Relations Order Handbook* § 6.9 and 29 (2d ed 1999 and Supp 2001).