Submitted October 26, 2011, reversed and remanded with instructions to divide husband's military pension consistently with this opinion; otherwise affirmed February 13, 2013

In the Matter of the Marriage of

William Lee MALPASS,
*Petitioner-Respondent,*
*and*

Emily F. MALPASS,
*Respondent-Appellant.*

Lane County Circuit Court
151002461; A146655

296 P3d 653

Daniel S. Margolin and Stephens Margolin PC filed the brief for appellant.

No appearance for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Wife appeals a judgment dissolving the parties' marriage, raising two assignments of error.[1] First, she contends that the trial court erred in awarding husband, the noncustodial parent, the right to claim tax exemptions for their dependent children or, alternatively, that the court erred in failing to consider and make findings regarding the effect of that award on husband's child support obligation. Second, wife contends that the court erred in its division of husband's military pension. We conclude that wife's contention regarding the award of the tax exemptions is unpreserved and that wife invited any error regarding the court's failure to consider and make findings regarding the effect of that award. However, we agree with wife that the court erred in its division of husband's military pension, and we reverse and remand on that basis.

Wife requests that we exercise our discretion under ORS 19.415(3)(b) to review this case *de novo*. We decline to do so. *See* ORAP 5.40(8)(c) (providing that we exercise *de novo* review "only in exceptional cases"). Accordingly, we are bound by the trial court's findings of historical fact as long as they are supported by any evidence in the record, and we review the trial court's legal conclusions for errors of law. *Bock and Bock*, 249 Or App 241, 242, 275 P3d 1006 (2012).

Wife and husband married in April 2000 and have two minor children. Husband has been in the Army since 1997. At the time of trial, in July 2010, husband was scheduled to leave approximately one month later to begin a tour of duty in South Korea. Following trial, the court entered a dissolution judgment that, as relevant to this appeal, (1) awarded husband, the noncustodial parent, the right to claim tax exemptions for both children until 2014;[2] (2) ordered husband to continue paying $781 in temporary child support and retained jurisdiction for purposes of

---

[1] Husband did not appear on appeal.

[2] The court further ordered that, after 2014, "each party shall be entitled to claim one child as a tax dependent exemption," and that, "[a]t such time that there is only one exemption[,] the parties shall alternate claiming that child with wife claiming the [exemption] the first year."

calculating child support at a later date;[3] and (3) awarded wife "50 [percent] of the marital fraction of [husband's] interest in his Army retirement plan plus [Survivor Benefit Plan] coverage proportionate to wife's share of the retirement benefits based on [husband's] current pay grade of E7."

Wife first contends that the trial court erred as a matter of law in awarding the right to claim the tax exemptions to husband, the noncustodial parent.[4] Wife acknowledges that existing case law permits a trial court to award a dependent child exemption to a noncustodial parent. *See, e.g., Rossi and Rossi,* 128 Or App 536, 541, 876 P2d 820 (1994) ("The right to claim tax exemptions for a dependent child may be awarded to either party."); *Hay and Hay,* 119 Or App 372, 374, 850 P2d 410 (1993) ("[The child support guidelines state] that it is presumed that the custodial parent will have the dependency exemption. However, the exemption can be awarded to the noncustodial parent if the tax consequences are considered in calculating the amount of child support." (Emphasis omitted.)). However, wife argues that the case law is contrary to federal law and should be disavowed:

"As a matter of federal income tax law, the custodial parent holds the legal right to claim the child dependent tax exemption for a qualifying child. [A federal statute] sets forth the controlling law and procedural requirements for determining which parent qualifies and has the legal right to claim the child dependent tax exemption and, more importantly, which one does not. The determination resulting from the application of [the federal statute] may not be changed by command of a state court judge. *There is no availability under federal law for a state court judge to order otherwise.* Here, mother clearly is the custodial parent and the only parent entitled to the exemptions under federal law."

(Emphasis added.)

---

[3] The court found that it could not determine the amount of husband's income at the time of trial due to his upcoming deployment to South Korea.

[4] Specifically, the court ordered:

"[Husband] shall be entitled to claim the children as tax dependent exemptions ***. *** [Wife] agrees to sign IRS Form 8332 which [husband] may attach to his tax returns."

We conclude that wife failed to preserve that argument. At trial, wife and husband each sought the right to claim both exemptions. During husband's cross-examination of wife, the following exchange occurred:

"[HUSBAND'S COUNSEL]: You want the Court to award the tax dependency exemptions to you?

"[WIFE]: Yes. I have full custody of my children. I think they should be awarded to me.

"[HUSBAND'S COUNSEL]: But if you're not making enough money for—

"[WIFE'S COUNSEL]: Objection, Your Honor. The regulations on child support say they go to the custodial parent. It's—the [Internal Revenue Service (IRS)] is going to do it automatically if she has custody.

"* * * * *

"[HUSBAND'S COUNSEL]: I don't know about the objection, but in terms of that being true, *Your Honor, if the Court orders he get the dependency exemptions, all she has to do is sign a form if necessary.* But over the last 20 years it's been my experience, I'd almost never needed those forms, so this Court can do whatever it wants and that won't be a problem on the tax returns.

"THE COURT: I was under the impression that changed.

"[WIFE'S COUNSEL]: *Well, I think the IRS regulations say they automatically go to the custodial parent, but there is a case, even though the Court can't assign those, it can order a person to sign the Form 8332, non—the custodial parent signs a form with the IRS. I think that's the only thing the IRS still recognizes.*

"But the second point is the child support calculations. Assume they go to the custodial parent and child support amounts are already based on the fact that, well, you're going to get a tax advantage. So there's two reasons: One, the IRS says they go to the custodial parent; but, secondly, the amount of child support is less because they factor in the fact mom would have income tax benefits.

"[HUSBAND'S COUNSEL]: I wouldn't disagree with that, Your Honor, except it's also built right into these new

calculations, that you can factor in the rebuttal factors and give the dependency exemption to whoever this Court wants to, so . . .

"* * * * *

"THE COURT: And there is a way, then, to adjust it in the child support?

"[HUSBAND'S COUNSEL]: Yes.

"* * * * *

"THE COURT: Objection overruled."

(Emphases added.)

Although wife's counsel noted that "the IRS regulations say [that the exemptions] automatically go to the custodial parent," counsel did not argue that federal law *precluded* the court from doing as husband's counsel suggested—ordering a custodial parent to sign IRS Form 8332.[5] Nor did wife's counsel argue that existing case law—which counsel referenced—is contrary to federal law. Therefore, wife's argument on appeal that federal law precludes a court from awarding the right to claim a tax exemption to the noncustodial parent is unpreserved, and we do not consider it further. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court."); *Charles v. Palomo*, 347 Or 695, 700, 227 P3d 737 (2010) ("[W]e will review an issue advanced by a party on review as long as that party raised the issue below with enough particularity to assure that the trial court was able to 'identify its alleged error' so as to 'consider and correct the error immediately, if correction is warranted.'" (quoting *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000))).

Wife alternatively argues that the trial court erred in failing to consider and make findings regarding the impact of the tax exemption award on husband's child support obligation.[6] *See Hay*, 119 Or App at 374 (requiring

---

[5] IRS Form 8332 permits a custodial parent to release his or her claim to an exemption for a dependent child.

[6] The scale used to calculate child support under the Oregon Child Support Guidelines "presumes the parent with primary physical custody will take the tax exemption for the child for whom support is sought for income tax purposes. When

court to make written findings concerning the impact of the tax exemption award on a parent's child support obligation); *Ranes and Ranes*, 118 Or App 264, 269, 846 P2d 1195 (1993) ("On remand, the trial court must consider the effect of the award of the dependency exemption to [the noncustodial parent] when calculating child support under the guidelines."); *Sigler and Sigler*, 133 Or App 68, 74, 889 P2d 1323 (1995) (finding no error where the trial court "expressly considered the tax effects" of its award of the right to claim the exemption to the noncustodial parent and concluded that no departure from the guidelines was necessary). Instead, the court continued husband's temporary child support obligation and retained jurisdiction to calculate child support when more information regarding husband's monthly income became available. As explained below, we conclude that any error was invited by wife and, therefore, do not consider the merits of her argument.

"Under the invited error doctrine, a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (internal quotation marks omitted).

As noted, at the time of trial, husband was scheduled to begin a tour of duty in South Korea. Husband testified that he did not know what his monthly income would be but that he would know in three months. During argument, the court proposed the following:

> "Now, on—the big hullabaloo in this case, obviously, is the income. And one thing that pops to my mind is—I'm not dead set for or against this, but one thing that pops in my mind since we're going to have reliable information in a relatively short period of time, October we're talking about?
>
> "* * * * *

---

that parent does not take the tax exemption, the rebuttals in OAR 137-050-0760 may be used to adjust the child support obligation." OAR 137-050-0725(9). OAR 137-050-0760(1)(h) permits a court to adjust the amount of child support awarded based on, among other things, "[t]he tax consequences, if any, to both parents resulting from * * * the determination of which parent will name the child as a dependent[.]"

"* * * One thing that pops to my mind is *continue the temporary order until we get reliable information in [October]. And we then recalculate child support.*"

(Emphasis added.) Wife's counsel responded that the "Court's idea is a good one." Later, wife's counsel suggested:

"And unless there's some—generally, the rebuttal factor, the way that works is if the noncustodial gets one, then the amount of child support is increased. And the Court sort of looks at the tax advantage to [husband]. The tax loss to [wife], if any, and then they increase the child support on that.

"So that is one way of doing it. We really don't have any testimony on the way his tax is going to be."

The trial court orally ruled, as relevant here, that the temporary child support would remain in place until husband's income was established. Following that ruling, the following exchange occurred:

"[HUSBAND'S COUNSEL]:  Just for clarification on the child support, you said income's the same. Can we just order the child support without doing calculations?

"THE COURT:  Yes. Yes.

"* * * * *

"THE COURT:  You might want to just put something in [the judgment] as the Court finding present income so difficult to conclude, it's falling back on the present child support payment. I mean, if you want to make a paper record of that, then I'm just opting out because otherwise I'm thinking I'm doing too much guessing.

"* * * * *

"[HUSBAND'S COUNSEL]:  That's why I don't want to use the child support calculation and incorporate them.

"THE COURT:  Right. Because this is not a leg for future calculations.

"* * * * *

"THE COURT:  This is just a ballpark figure that's already in effect that is less of a guesstimate. I can, if then—if I started guessing."

Here, the trial court proposed to the parties that it "continue the temporary order until we get reliable information in [October]. And we then recalculate child support." Wife's counsel responded that the "Court's idea is a good one." Moreover, although wife's counsel argued that "the way that works is if the noncustodial [parent] gets [a tax exemption], then the amount of child support is increased," wife's counsel acknowledged that "[w]e really don't have any testimony on the way his tax is going to be." Later, wife's counsel remained silent while the court and husband's counsel explicitly agreed that the court could "order the child support without doing calculations" because "this is not a leg for future calculations" but rather "a ballpark figure that's already in effect." The court's proposed course of action—to delay calculation of child support—necessarily meant that the trial court would not make findings regarding whether the presumptive amount of child support calculated under the guidelines should be adjusted using the rebuttal factors in OAR 137-050-0760, including the rebuttal factor in OAR 137-050-0760(1)(h), which permits a court to adjust the presumptive support amount based on "the tax consequences, if any, to both parents resulting from * * * the determination of which parent will name the child as a dependent[.]" In consenting to the delayed calculation, wife was actively instrumental in the trial court's failure to consider and make findings accounting for the award of the tax exemptions to husband and, therefore, cannot now complain about that failure on appeal. Accordingly, we reject wife's first assignment of error.[7]

Finally, wife contends that the trial court erred in its division of husband's military pension. As noted, husband joined the Army in 1997, and wife and husband were

_____

[7] As noted, we understand wife's argument on appeal to be that the court erred in failing to consider and make findings regarding the impact of the tax exemption award on husband's child support obligation. That is, wife asserts that the court erred in awarding the exemptions to husband without considering and making findings regarding whether to adjust husband's child support using the rebuttal factor in OAR 137-050-0760(1)(h). To the extent that wife asserts that the court was *required* as a matter of law to adjust husband's child support obligation based on its award of the exemptions to husband, we reject that argument without further discussion. *See* OAR 137-050-0725(9) (providing, in part, that "[w]hen [a custodial] parent does not take the tax exemption, the rebuttals in OAR 137-050-0760 *may* be used to adjust the child support obligation" (emphasis added)).

married in 2000. At trial in 2010, husband testified that he was planning to serve another seven years in the Army and then retire. Further, he testified that his military pension "is loaded heavy the last three years of * * * service in the military prior to retirement." On that basis, husband requested that the pension be divided as of the day of dissolution. Wife objected, arguing that the pension should be divided in accordance with our opinion in *Kiser and Kiser*, 176 Or App 627, 32 P3d 244 (2001) (rejecting the husband's suggestion that the trial court award the wife 50 percent of the monthly payout that he would receive if he retired at the date of dissolution and requiring, instead, that the court look to the value of the benefit at retirement).

The trial court ordered that wife "be awarded 50 [percent] of the marital fraction of [husband's] interest in his Army retirement plan plus [Survivor Benefit Plan] coverage proportionate to [wife's] share of the retirement benefits *based on [husband's] current pay grade of E7.*" (Emphasis added.) On appeal, wife reiterates her argument, asserting that, under *Kiser*, 176 Or App 627, and *Stokes and Stokes*, 234 Or App 566, 228 P3d 701 (2010), the court erred in limiting the amount of husband's total pension benefit.

In Oregon, pensions are personal property that are subject to division at the time of dissolution. *See* ORS 107.105(1)(f)(A) ("A retirement plan or pension or an interest therein shall be considered as property."). "Generally, a spouse is entitled to one-half of that portion of a pension that was accumulated during the marriage." *Stokes*, 234 Or App at 573. Husband's military pension is in the form of a defined benefit plan that has not yet matured. Under that type of plan, the "time" rule is typically used to calculate the marital portion of benefits. *Id.* at 575. "Under that rule, the marital portion is determined by multiplying the total actual pension benefit by a fraction, the numerator of which is the number of years (or months) of service during the marriage and the denominator of which is the total years (or months) of employment." *Id.*

In *Kiser*, the husband argued that "the trial court should award [the] wife 50 percent of the monthly payout he would receive if he retired at *the date of dissolution.*" 176

Or App at 631 (emphasis added). We rejected that approach, stating that, "when retirement benefits have not matured and are thus not presently liquid, it is equitable to look to the *value of the benefit at retirement*[.]" *Id.* (emphasis added).

Similarly, in *Stokes*, the trial court used a "hypothetical retirement date"—in that case, the date of separation—to determine the total value of the pension. 234 Or App at 574 (internal quotation marks omitted). Citing *Kiser*, we concluded that the court erred: "[U]nder Oregon law, the marital portion of [the] husband's pension must be calculated as a fraction *of the entire actual pension*, rather than as a fraction of a hypothetical pension amount." *Id.* (emphasis in original). We continued:

> "[T]he appropriate measure of the total pension benefit is the value of husband's pension as of the date of his actual retirement, determined either by way of the actuarial present value or as the benefits are distributed at the time of retirement. The trial court erred in using a hypothetical retirement date based on the date of separation in determining the total value of the pension."

*Id.* at 575-76.

On appeal, wife argues that the court erred in using a hypothetical pension amount—based on husband's pay grade at the time of dissolution—instead of using the actual value of the pension at retirement. We agree with wife. The trial court's division of the pension did not "look to the *value of the benefit at retirement*" as *Kiser* requires, 176 Or App at 631 (emphasis added), and it failed to calculate the marital portion of husband's pension "as a fraction *of the entire actual pension*" under *Stokes*, 234 Or App at 575 (emphasis in original). Instead, the court improperly ordered the use of a "hypothetical pension amount" based on the pay grade that husband held at the time of dissolution. The court erred in doing so. On remand, the court should order the calculation of the marital portion of husband's pension as a fraction of the entire actual pension and adjust wife's survivor benefits accordingly.

Reversed and remanded with instructions to divide husband's military pension consistently with this opinion; otherwise affirmed.