Submitted April 12, reversed and remanded October 30, 2013

In the Matter of the Marriage of

Bradley J. TOUGH,
*Petitioner-Appellant,*
*and*

Margaret A. TOUGH,
*Respondent-Respondent.*

Lincoln County Circuit Court
850363; A150941

313 P3d 326

B. Kevin Burgess and Watkinson Laird Rubenstein Baldwin & Burgess, P.C., filed the briefs for appellant.

Michael C. Peterson and Heltzel, Williams, Yandell, Roth, Smith, Petersen & Lush, P.C., filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

Armstrong, P. J., dissenting.

**EGAN, J.**

Husband appeals a supplemental judgment ordering entry of a qualified domestic relations order (QDRO),[1] contending that the trial court erred in its calculation of wife's interest in his pension plan. Specifically, he contends that the QDRO divides his pension benefits in a manner that is inconsistent with the division provided for in the parties' dissolution judgment. We agree and, accordingly, reverse and remand.

Husband and wife were married for just over 10 years, during which time husband was employed by Georgia Pacific. Husband's employment provided him with a defined benefit pension plan. When the parties divorced, their property was divided according to a dissolution judgment, which provides, in relevant part:

> "[Wife] shall be entitled to receive one-half of the monthly benefits that [husband] is entitled to receive from his pension, as set forth in Exhibit 'C,' which is by this reference incorporated herein, if and when he receives those payments pursuant to the terms of his agreement with the union. [Wife] shall not have any right to claim any retirement benefits which accrue to [husband] after March 1, 1985."

Exhibit C provides that husband was "100% vested" in the benefit that he had accrued as of December 31, 1984, which was a monthly pension benefit of $215.25. It further estimated the monthly benefit that husband could potentially earn by continuing to work until he was 65 years old to be $971.25.

Husband continued to work for Georgia Pacific for more than 13 years following the dissolution. During that time, the value of his retirement benefits increased. After he had filed for retirement, but before he began to receive any benefits, wife petitioned the court for a QDRO that would effectuate the dissolution judgment's division of husband's pension benefits.

---

[1] A QDRO is a judgment, decree, or order that creates or recognizes the existence of an alternate payee's right to receive all or a portion of a retirement plan participant's benefits payable under an Employee-Retirement-Income-Security-Act-qualified employee benefit plan. 29 USCA § 1056(d)(3)(B). Generally, an employee's retirement benefits may not be assigned or alienated. 29 USCA § 1056(d)(1). However, there is an exception to that rule for QDROs. *See* 29 USCA § 1056(d)(3)(A).

At a show cause hearing on wife's petition, wife contended that the trial court should enter a QDRO that calculated her interest in husband's pension according to the "time rule." Typically, the time rule is used to calculate a nonemployee spouse's interest in the benefits of a defined benefit plan. *Kiser and Kiser,* 176 Or App 627, 632 n 1, 32 P3d 244 (2001). The time rule provides that the nonemployee spouse's interest is determined by dividing the marital portion of the retirement benefits, at the time of retirement, in half.[2] "The marital portion is determined by multiplying the benefit to be divided by a fraction, the numerator of which is the years (or months) of service during which the couple were married and the denominator is the total years (or months) of employment." *Id.* Thus, under the time rule, the nonemployee spouse's interest in the retirement benefits is calculated by multiplying the employee spouse's benefits at the time of retirement by a fraction representing the portion of the number of years worked during which the parties were married and dividing the resulting number in half.

Husband challenged wife's petition, contending that she was seeking to circumvent the division of his pension benefits that the dissolution judgment provided for. Husband contended that the dissolution judgment provided that wife was entitled to one half of the pension benefits that he had accrued at the time of dissolution and that wife was not entitled to any benefits that accrued under husband's pension after that point.

In essence, the parties' dispute focused on whether the dissolution judgment provided that wife's interest in husband's pension was to be determined based on husband's pension benefits at the time of dissolution or by applying the time rule to husband's benefits at the time that he retired. Under husband's construction of the dissolution judgment, wife would have a smaller interest in husband's ultimate pension benefits than she would under her construction.

---

[2] We have specifically noted that, "when retirement benefits have not matured and are thus not presently liquid, it is equitable to look to the value of the benefit at retirement" and that "a defined benefit plan * * * is not appropriately divided on the basis of the account balance or contributions made as of the date of dissolution." *Kiser,* 176 Or App at 631-32.

The trial court agreed with wife's construction of the dissolution judgment. Consequently, it calculated wife's interest in husband's pension benefits by applying the time rule to the benefits at the time of retirement. The court then entered a QDRO that provided for that division of the benefits.

Husband appeals, contending that the court incorrectly construed the dissolution judgment and that it erred in entering a QDRO that divides his pension benefits by applying the time rule to his benefits at the time of retirement. In response, wife contends that the dissolution judgment unambiguously provides that husband's benefits are to be divided among the parties by applying the time rule to husband's pension benefits at the time of his retirement. In the alternative, wife contends that the provision providing for the division of husband's pension benefits is ambiguous and that extrinsic evidence, such as the "overall nature" of the dissolution judgment, demonstrates that the dissolution court intended to use the time rule to divide husband's pension benefits among the parties.

Thus, the parties' dispute reduces to a question of construction of the dissolution judgment. We therefore examine the language of the dissolution judgment to determine whether the provision concerning the division of husband's pension benefits is ambiguous. "A provision in a judgment is ambiguous if it is capable of more than one reasonable interpretation." *Neal and Neal*, 181 Or App 361, 365, 45 P3d 1011 (2002).

Husband contends that the provision at issue unambiguously provides that wife is entitled to 50 percent of the pension benefits that he had accrued at the time of dissolution. He explains that the language of the provision providing that wife "shall be entitled to receive one-half of the monthly benefits that [husband] is entitled to receive from his pension, as set forth in Exhibit 'C,'" limits the property that the provision divides between the parties to the benefits listed in Exhibit C, which are the benefits that husband had accrued at the time of dissolution. Husband contends that the provision reiterates that limitation by stating that wife

"shall not have any right to claim any retirement benefits which accrue to [husband] after March 1, 1985." He contends that the provision, by prohibiting wife from claiming any retirement benefits that accrue to husband after March 1, 1985, clearly indicates that wife's interest in his benefits is limited to those benefits that he had accrued at the time of dissolution.

In response, wife contends that the dissolution judgment unambiguously provides that husband's benefits are to be divided among the parties according to the time rule. She contends that the first sentence of the provision provides that she is entitled to one-half of husband's monthly benefits when he receives them. Wife acknowledges that, under her interpretation of that sentence, she would be entitled to one-half of *all* of husband's pension benefits when he receives those benefits; she nonetheless contends that the second sentence, which provides that she is not entitled to any benefits that accrue to husband after March 1, 1985, limits the scope of the first sentence by describing the marital portion of the pension benefits, which is the portion of husband's pension benefits at retirement that could be allocated to the years during which the parties were married.

Husband has the better of the arguments. To begin with, we disagree with wife's contention that the provision provides that wife's interest is to be calculated at the time that husband receives his benefits. The first sentence of the provision provides that wife "shall be entitled to receive one-half of the monthly benefits that [husband] is entitled to receive from his pension, as set forth in Exhibit 'C,' * * * if and when he receives those payments pursuant to the terms of his agreement with the union." That sentence provides the timing for when wife is entitled to receive her interest in the benefits, which is *"if and when* [husband] receives those payments"; it does not provide the timing for when wife's interest in the benefits is to be calculated. (Emphasis added.)

Instead, the sentence expressly links wife's interest in husband's pension to the benefits that he is entitled to receive "as set forth in" Exhibit C. The benefit that Exhibit C

provides that husband is entitled to receive is the monthly pension benefit that he had accrued as of December 31, 1984.[3]

To construe the dissolution judgment to provide that wife's interest in the pension benefits is to be calculated based on the benefits that husband has accrued at the time of retirement would ignore both the provision's express reference to the benefits that husband is entitled to receive "as set forth" in Exhibit C and the express limitation on the benefits that wife is not to receive. We therefore conclude that wife's construction of the provision is not reasonable. *Cf. Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 473, 836 P2d 703 (1992) (explaining that a construction that renders language meaningless is unreasonable). Consequently, we conclude that the dissolution judgment unambiguously provides that wife's share of husband's pension benefits is not appropriately calculated under the time rule.

The dissent reasons that the QDRO did not modify or conflict with the dissolution judgment, but rather "implemented the property division in the judgment." 259 Or App at 274-75 (Armstrong, P.J., dissenting). We do not agree that the judgment is susceptible to that interpretation, because the dissolution judgment unambiguously reflects the intent to give wife a one-half interest in the benefits that husband was entitled to receive at the time of the dissolution "as set forth" in Exhibit C. If the dissolution judgment intended to invoke the time rule, Exhibit C—which, again, was incorporated into that judgment—is entirely superfluous, for wife's portion of the benefits could be calculated as needed without reference to any of the figures contained in that exhibit. Moreover, we note that the QDRO conflicts with what wife requested during the divorce proceedings. In her pretrial statement to the trial court, wife not only identified the then-present value of husband's pension benefit at retirement

---

[3] We are mindful of the discrepancy between the date provided in the dissolution judgment and the date given in Exhibit C. Because husband contends only that the trial court erred in concluding that wife's share of the benefits is appropriately calculated under the time rule, we are not called upon to decide which of the two dates applies to limit that portion of the benefits that wife is entitled to share in and we therefore express no opinion on the matter.

as "approximately $225.00 per month," she then stated that "[wife] requests that she be awarded *a one-half interest in this pension plan vested to date*." (Emphasis added.)

The division of retirement benefits at dissolution is a property division that is not subject to modification unless the property award was based on the enhanced earning capacity of one of the parties. ORS 107.135(1)(e); *Tiley and Tiley*, 147 Or App 262, 266, 936 P2d 367, *rev den*, 325 Or 491 (1997). Wife did not petition the trial court to modify the dissolution judgment according to ORS 107.135(1)(e). As a result, wife is not entitled to a division of husband's retirement benefits contrary to the division provided for in the dissolution judgment. Because the dissolution judgment unambiguously provides that wife's share of husband's pension benefits is not to be calculated by using the time rule, the trial court erred in entering a QDRO that calculated wife's interest in husband's pension benefits by using the time rule.

Reversed and remanded.

**ARMSTRONG, P. J.,** dissenting.

In reversing the trial court, the majority ultimately— and erroneously—concludes that the trial court's qualified domestic relations order (QDRO) conflicts with the underlying dissolution judgment that it was designed to implement. It does not.

To reach its conclusion, the majority reasons as follows: The dissolution judgment expressly provides that wife is not entitled to claim any pension benefits that accrued to husband after the dissolution of the parties' marriage. By applying the time rule, the QDRO awards wife pension benefits that accrued to husband after the dissolution of the parties' marriage. Hence, the QDRO impermissibly modified the property division in the dissolution judgment.

The majority's conclusion is based on a misunderstanding of the time rule when applied to pension benefits that accrue under a defined-benefit plan. A division of pension benefits entails three separate determinations by a dissolution court: the court must determine the marital portion of the benefits, it must determine the value of the marital

portion, and it must divide the marital portion between the parties. Here, the actual *division* of husband's retirement benefits is not in dispute—both parties acknowledge that wife is entitled to one half of the marital portion of those benefits. However, the parties do dispute the dollar amount of wife's half interest, which implicates both the apportionment and the value of the marital portion of husband's pension benefits.

As the majority acknowledges, the time rule is typically used to calculate the marital portion of a pension benefit. 259 Or App at 267; *see, e.g.*, *Kiser and Kiser*, 176 Or App 627, 631-32, 632 n 1, 32 P3d 244 (2001). The rule is not complicated: the marital portion is simply represented by a fraction—the coverature fraction. The numerator of the fraction represents the duration of employment service during which the parties were married; the denominator represents the total duration of employment service. In the context of a defined-benefit plan, the time rule ignores other factors— such as contribution amounts, account balances, increases in salary, or the vesting of benefits over different periods of service—because benefits under a defined-benefit plan are understood to appreciate on a straight-line basis. In other words, the benefits are deemed *to accrue* in a straight line, that is, in equal increments for each year of participation in the defined-benefit plan. *See Kiser*, 176 Or App at 631-32, 632 n 1; *Caudill and Caudill*, 139 Or App 479, 483-84, 912 P2d 915 (1996).

After establishing the marital portion of a given pension plan—that is, the portion of the benefits *that accrued* during the marriage—through application of the time rule, the value of that portion may be determined simply by multiplying the coverature fraction by the total value of the benefits due under the pension plan. The total value of the benefits, in turn, can be either the actuarial present value of the benefits, *see, e.g.*, *Richardson and Richardson*, 307 Or 370, 378, 796 P2d 179 (1989); *Reich and Reich*, 150 Or App 311, 313, 946 P2d 319 (1997), or the value of the benefits as they are distributed, *see, e.g.*, *Cave and Cave*, 85 Or App 336, 338, 736 P2d 215 (1987). *See also Kiser*, 176 Or App at 632. The court then divides that amount between the parties.

Thus, while the time rule reflects a specific conception of the appreciation of pension benefits—*viz.*, accrual in *equal* increments for each year of participation in the defined-benefit plan—when properly applied it does *not* have the effect that the majority attributes to it. That is, it does *not* result in an award of benefits that accrue *after* the dissolution of the parties' marriage. We have recognized that proposition since at least 1987. *See, e.g., Cave,* 85 Or App at 338.

In *Cave,* the dissolution court awarded the wife one-half of the husband's monthly pension payments "to the extent that those benefits ha[d] vested and accrued on the date that [the] decree bec[ame] final," including "any future cost of living increases." *Id.* The husband appealed, arguing that the award of future cost-of-living increases improperly expanded the wife's share of his pension benefits beyond the marital portion. We disagreed, reasoning that, by the judgment's terms, "any future cost-of-living increases will be based solely on that portion of the pension vested as of the date of the decree." *Id.* That conclusion recognizes a distinction between the apportionment and the valuation of pension benefits; thus, when a pension benefit's value is not concretely determined in the dissolution judgment—thereby leaving the value of the marital portion undefined—an increase in the pension benefit's value before that value is concretely determined does *not* result in an award of benefits that can be understood to have accrued *after* the dissolution of the parties' marriage.[1]

Turning to the application of the time rule here, the court generated a coverature fraction, the numerator of which was 10.42 (husband's years of service during the marriage) and the denominator of which was 23.58 (husband's

---

[1] Conversely, when a dissolution court intends to foreclose the possibility of an increase in value of a given pension benefit—and, consequently, the value of the marital portion—it is not difficult to do that. The court can (and would have, even in 1986) simply state that value in the dissolution judgment. *See, e.g., Sands and Sands,* 59 Or App 653, 658, 651 P2d 1387 (1982), *rem'd on other grounds,* 295 Or 443, 666 P2d 834 (1983) ("wife is awarded $190 per month"); *Rogers and Rogers,* 45 Or App 885, 897-98, 609 P2d 877, *modified on recons,* 47 Or App 963, 615 P2d 412 (1980), *modified on recons,* 50 Or App 511, 623 P2d 1108 (1981) (altering dissolution judgment to award wife "$500 per month, payable to her from the total benefits, as and when husband receives them."); *Vinson and Vinson,* 48 Or App 283, 287, 616 P2d 1180 (1980) (awarding wife "$624 per month, payable as and when husband receives payment").

total years of service under the plan). That results in a marital portion—*viz.*, the amount of husband's pension benefits *that accrued before March 1, 1985*—of 44.18 percent.[2] The court then awarded wife one-half of that amount—22.09 percent of husband's pension benefits—through the entry of the QDRO.

Nothing about that process conflicts with or modifies *any* provision of the dissolution judgment; the QDRO simply awarded wife her share of husband's pension benefits

---

[2] Although husband petitioned to dissolve the parties' marriage in 1985, the trial court entered the dissolution judgment on January 28, 1986. The judgment provided that the dissolution would become effective one month later, on February 28, 1986. However, in an apparent oversight, most of the printed dates in the judgment refer to 1985. The trial court noticed and corrected some of those dates but left others unchanged—including the March 1, 1985, date in the provision that divided husband's retirement benefit, which appears to have been a clerical error, given that the dissolution of the parties' marriage became effective precisely one year later, on February 28, 1986. The trial court acknowledged that clerical error at the QDRO hearing in 2012 but declined to correct it, despite its authority to do so. *See* ORCP 71 A ("Clerical mistakes in judgments *** arising from oversight *** may be corrected by the court at any time on its own motion or on the motion of any party and after such notice to all parties who have appeared, if any, as the court orders.").

Although that error has no material effect on my analysis, it is worth noting that, given the majority's opinion today, the trial court will be in an unenviable position if it elects to correct the error on remand. How would it value the marital portion of husband's pension benefits as of March 1, 1986? The majority provides no guidance, except to foreclose the established method by which Oregon courts perform that valuation.

To a lesser extent, the trial court will face that same difficulty in determining the value of husband's pension benefits as of March 1, 1985, which highlights another error that I believe lurks beneath the surface of the majority's analysis. The majority believes, at least implicitly, that Exhibit C to the original dissolution judgment in some way establishes the value of the marital portion of husband's pension benefits, despite a disparity between the valuation date in Exhibit C for the estimated value of husband's pension benefits, *viz.*, December 31, 1984, and the date on which wife's interest in husband's pension benefits ends under the dissolution judgment, *viz.*, March 1, 1985. While it may be easy enough—although still improper—to dismiss the two-month discrepancy between those dates as immaterial and to continue to assign significance to the dollar amount identified in Exhibit C, it is much more difficult to do that when Exhibit C represents an estimate of the value of husband's pension benefits on a date that is 14 months *before* wife's interest in those benefits ended.

Furthermore, because husband will receive his pension benefit in a lump sum, rather than in monthly payments over his remaining life, the court will have to fashion a QDRO that determines wife's share of the lump sum. Given the majority's conclusion that the time rule cannot be applied, it is not obvious how the court should do that. Nor is it obvious that the result will be different from the result produced under the QDRO that the court entered and the majority rejects.

that had accrued *before* March 1, 1985. In the language of the judgment, wife was awarded "one-half of the monthly benefits that [husband] is entitled to receive from his pension \* \* \* if and when he receives those payments \* \* \* [and she has no] right to claim any retirement benefits which accrue[d] to [husband] after March 1, 1985." Because the QDRO did not modify the dissolution judgment's division of property but, rather, implemented the property division in the judgment, I dissent from the majority's decision to reverse the trial court.