446 June 26, 2024 No. 430

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

John JARVIE,
aka Jon Jarvie,
*Petitioner-Respondent,*
*and*

Andrea CSAVAJDA,
*Respondent-Appellant.*

Clackamas County Circuit Court
19DR18480; A179609

Todd VanRysselberghe, Judge (Order entered September 1, 2022).

Ulanda L. Watkins, Judge (Order entered December 8, 2022).

Argued and submitted May 15, 2024.

Daniel S. Margolin argued the cause for appellant. Also on the briefs was Margolin Family Law.

Michael J. Fearl argued the cause for respondent. Also on the brief was Schulte, Anderson, Downes, Aronson & Bittner, PC.

Before Aoyagi, Presiding Judge, Jacquot, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

## KISTLER, S. J.

In this dissolution proceeding, the trial court approved using the "time rule" to determine the marital portion of wife's defined benefit plan and entered a supplemental judgment incorporating that ruling. *See Kiser and Kiser*, 176 Or App 627, 631-33, 632 n 1, 32 P3d 244 (2001) (explaining the time rule and when it typically applies). Wife appeals that supplemental judgment, arguing that it is inconsistent with the general dissolution judgment. We affirm.

Husband and wife were married in 2000. During their marriage, they were both members of the Oregon Public Employees Retirement System (PERS), and each will receive a pension from PERS on retirement. Although the PERS statutes provide different methods for calculating a member's pension benefits, s*ee Piller and Piller*, 318 Or App 836, 842-43, 843 n 7, 508 P3d 553 (2022), the parties agree that each of them will receive a defined benefit plan on retirement. That is, the parties agree that, when they retire, PERS will calculate each party's pension benefit by multiplying the party's final average salary by a statutorily determined percentage (usually 1.67 percent for most PERS members), and then multiplying the resulting number by the party's years of service. *See Strunk v. PERB*, 338 Or 145, 160-61, 108 P3d 1058 (2005) (explaining the full statutory formula method for calculating pensions); *Piller*, 318 Or App at 843 (same).[1]

Husband and wife separated at the end of 2019, and the trial court entered a stipulated general dissolution judgment in 2021. The general dissolution judgment provides that husband and wife's defined benefit plans will be "divided equally." More specifically, it provides that each party "shall be entitled to half of the marital value of [the other party's defined benefit] plan." It also specifies the "end date for calculating the marital period for both divisions," which is December 31, 2019, the approximate date the

---

[1] The PERS statutes do not use the phrase "defined benefit plan." However, what the parties refer to as a "defined benefit plan" corresponds with what the Supreme Court referred to in *Strunk* as the full statutory formula for calculating a PERS member's pension on retirement. *See Strunk*, 338 Or at 160.

parties separated. Finally, the general dissolution judgment directs the parties to submit Qualified Domestic Relations Orders (QDROs) that divide their future pension benefits.[2]

The parties did not agree on how the "marital value" of their pensions should be determined, and the court held a hearing to resolve their dispute. At that point, wife was 55 years old and planned to continue working for the state.[3] Husband was 51 years old; he had stopped working full time for the state but had not yet begun to collect his pension. Relying on *Kiser*, husband argued that the court should use the "time rule" to determine the marital value (or marital portion) of each party's pension benefit.[4] Wife responded that the court should determine the specific dollar amount of the pension benefit each party would have received if they both had retired on December 31, 2019, and award the other party half that amount.[5]

The trial court agreed with husband. It reasoned that, although the general dissolution judgment does not

---

[2] The general dissolution judgment provides in part:

"[E]ach party has a PERS OPSRP defined benefit plan. Both PERS OPSRP defined benefit plans are being divided equally by QDRO. Therefore Wife shall be entitled to half of the marital value of Husband's PERS OPSRP plan. Husband shall likewise be entitled to half of the marital value of Wife's PERS OPSRP plan. The parties will each be responsible for hiring and paying for their own attorney to handle their QDRO to receive the funds from the other parties' account. The end date for calculating the marital period for both divisions shall be December 31, 2019. The court shall retain jurisdiction to enter supplemental orders, including Qualified Domestic Relation Orders, as needed to ensure these accounts are equally divided as directed here."

[3] We use the term "state" generically to refer to public bodies that participate in PERS.

[4] The court explained the time rule in *Kiser*:

"The 'coverature' or 'time rule' is typically used to calculate the 'marital portion' of benefits under a defined benefit retirement plan. The marital portion is determined by multiplying the benefit to be divided by a fraction, the numerator of which is the years (or months) of service during which the couple were married and the denominator is the total years (or months) of employment."

176 Or App at 632 n 1.

[5] Wife proposed determining the marital value of each party's pension benefits on December 31, 2019; that is, she proposed multiplying each party's final average salary on that date by the statutorily specified percentage and then multiplying the resulting number by the party's years of service as of December 31, 2019. Wife's proposal, if accepted, would result in specific dollar figures for each party that the court would divide equally between them.

specify how the "marital value" of the parties' defined benefit plans should be determined, *Kiser* explained that the "time rule" typically is used to determine the marital value of a defined benefit plan. The court was not persuaded by wife's argument that equitable considerations called for a different conclusion. The court accordingly entered two supplemental judgments. The first supplemental judgment directs that the time rule be used to determine the marital value of wife's future pension benefits on retirement and that the marital value of those future benefits be divided equally between the parties. The second supplemental judgment directs that the same rules be applied to husband's defined benefit plan. Wife appealed the first supplemental judgment but not the second.

On appeal, wife argues that the first supplemental judgment is "not consistent with the equal division of property ordered pursuant to the General Judgment, ignores the date certain valuation ordered in the General Judgment, and is in conflict with the court's objective to place the parties on as equal a footing as possible after divorce." In her view, the general dissolution judgment in this case is effectively no different from the general judgment in *Tough and Tough*, 259 Or App 265, 313 P3d 326 (2013). It requires the court to first determine the specific pension benefit that each party would have received on December 31, 2019, if they were eligible to retire then, and divide that dollar amount equally between the parties.

To the extent that wife argues that the first supplemental judgment is inconsistent with the terms of the general dissolution judgment, her appellate argument is difficult to square with her argument in the trial court. In her lawyer's initial remarks to the trial court, wife's lawyer told the court, "Well, I would first say that the general judgment does not specify which option to use in dealing—awarding the marital portion." And he contended that, even though *Kiser* stated that the time rule "typically" will be used when the general dissolution judgment does not specify how the marital portion of a defined benefit plan will be determined, *Kiser* "does not say that the married time ratio is always used" to fill gaps in a general judgment that divides defined

benefit plans. In his view, both the general dissolution judgment in this case and *Kiser* left room for the trial court to enter a just and equitable determination of how the "marital value" of the parties' defined benefit plans should be determined.

As we understand wife's arguments in the trial court, they foreclose her from arguing on appeal that the supplemental judgment is inconsistent with the terms of the general dissolution judgment. But even if they did not, we view the terms of the general dissolution judgment differently from wife. As we read the general dissolution judgment, it is consistent with, and indeed supports, using the time rule to determine the marital value of wife's defined benefit plan. The general dissolution judgment provides that the "marital value" of each party's defined benefit plan will be divided equally between the parties. It does not specify, however, how the "marital value" will be determined and, at a minimum, leaves open the possibility of using the time rule to determine that value. Moreover, given *Kiser*'s statement that the time rule "typically" will be used to determine the marital portion of a defined benefit plan that has not matured, the trial court reasonably concluded that the terms of the general dissolution judgment permitted, if they did not call for, using the time rule to determine the marital value of wife's defined benefit plan.

Wife argues, however, that the trial court's interpretation of the general dissolution judgment "ignores the date certain valuation ordered in the General Judgment." In wife's view, "the General Judgment *** identifies a date certain to *calculate* benefits, which is December 31, 2019." (Emphasis in original.) We read the terms of the general judgment differently. It provides that "[t]he end date for calculating the marital period for both divisions shall be December 31, 2019." As we read the general dissolution judgment, it does not order a "date certain valuation," nor does it "identif[y] a date certain to calculate benefits," as wife argues. Rather, it establishes the "end date for calculating the marital period." Far from supporting wife's position, the statement lends support to the trial court's ruling. It establishes "the marital period" during which wife earned

PERS benefits, a necessary component for applying the time rule.[6]

Finally, wife argues that the supplemental judgment results in an unequal division of property. As we understand wife's argument, it runs as follows. PERS will determine each party's pension at retirement by multiplying that party's final average salary by a statutorily defined percentage and then multiplying the resulting number by the party's years in service. Wife reasons that, because husband stopped working full time for the state during their marriage, both his final average salary and his years in service were fixed at the time of dissolution. It follows, she reasons, that, even though PERS will not calculate his pension benefits until he retires, neither his final average salary nor the amount of his future pension benefits will increase. By contrast, wife's salary can increase after the entry of the dissolution judgment and, under the statutory formula that PERS uses to calculate her pension benefits, her pension benefit at retirement will reflect, to some degree, those post-dissolution salary increases. She concludes that using the time rule to determine the marital portion of her defined benefit plan results in an inequity; it allows husband to share in her post-dissolution salary increases even though her share of his pension benefits will not include any post-dissolution salary increases.

Wife's argument is problematic. It assumes that husband will not return to work full time for the state after their divorce. If he did, then the inequity wife perceives will disappear because using the time rule to calculate the marital value of his pension benefits will capture the extent to which they include any post-dissolution salary increases. Beyond that, even if husband does not return to full-time work for the state after the parties' divorce, both supplemental judgments specify that the marital portion of each party's pension benefits—whatever they are—will be divided equally. However the marital value of the parties' pension benefits is determined, each party will receive an

---

[6] Wife's reliance on *Tough* turns on her assumption that the sentence discussed above orders a date certain valuation. That assumption, however, is incorrect, and so is her conclusion that the general judgment in *Tough* is indistinguishable from the general judgment in this case.

equal share of the marital value of the other party's pension benefit.

In our view, the inequality that wife perceives does not derive from an unequal division of the marital value of the parties' respective pension benefits. Rather, it derives from using the time rule to determine the marital value of the parties' pension benefits. In that respect, the objection that wife raises to using the time rule is virtually indistinguishable from an objection that the husband raised in *Kiser* to using that rule. Specifically, the husband argued in *Kiser* that

> "it is inappropriate to calculate wife's interest [in his pension] on the basis of benefits he will actually receive at retirement because that amount will, in turn, be calculated in part on the basis of potential salary increases husband earns after the dissolution, thus allowing wife a share of benefits that accrue after the divorce."

176 Or App at 631. We concluded that applying the time rule to divide the husband's pension plan in *Kiser* was "equitable." *See id.* That conclusion did not turn on the availability of an equivalent interest in the wife's pension plan; indeed, the wife in *Kiser* apparently had no pension plan of her own. *See id.* at 629. Rather, our conclusion in *Kiser* turned on whether the time rule was an equitable method for determining the marital value of a defined benefit plan that had not yet matured. *Id.* at 631-32; *see also Caudill and Caudill*, 139 Or App 479, 484, 912 P2d 915 (1996) (describing the time rule as a "more equitable" way of dividing a defined benefit pension that had not matured). Given *Kiser* and *Caudill*, we cannot say that the trial court erred in using the time rule to determine the marital value of wife's defined benefit plan in this case. We accordingly affirm the supplemental judgment determining the marital value of wife's defined benefit plan.

Affirmed.